6/40

## APPENDIX 9.6
## LOUISIANA CIVIL CASE REPORTING
Civil Case Cover Sheet - LA. R.S. 13:4688, Part G, §13 of the Louisiana Supreme Court
General Administrative Rules, and Appendix 9.6 of the Louisiana District Court Rules

This civil case cover sheet shall be completed by counsel for the petitioner, counsel's authorized representative, or by the self-represented litigant (if not represented by counsel) and submitted with the original petition filed with the court. The information should be the best available at the time of filing. This information does not constitute a discovery request, response or supplementation, and is not admissible at trial.

Suit Caption:

__Esplanade 2018 Partners, LLC__ vs. __Mt. Hawley Insurance Company__

Court: __24th Judicial District__     Docket Number: __834-598    A__

Parish of Filing: __Jefferson__     Filing Date: __November 2, 2022__

Name of Lead Petitioner's Attorney: __Micheal R. C. Riess__

Name of Self-Represented Litigant: _____

Number of named petitioners: __1__     Number of named defendants: __1__

Type of Lawsuit: Please check the categories which most appropriately apply to this suit (no more than 3 categories should be checked):

| | |
|---|---|
| ___ Auto: Personal Injury | ___ Auto: Property Damage |
| ___ Auto: Wrongful Death | ___ Auto: Uninsured Motorist |
| ___ Asbestos: Property Damage | ___ Asbestos: Personal Injury/Death |
| ___ Product Liability | ___ Premise Liability |
| ___ Intentional Bodily Injury | ___ Intentional Property Damage |
| ___ Intentional Wrongful Death | ___ Unfair Business Practice |
| ___ Business Tort | ___ Fraud |
| ___ Defamation | ___ Professional Negligence |
| ___ Environmental Tort | ___ Medical Malpractice |
| ___ Intellectual Property | ___ Toxic Tort |
| ___ Legal Malpractice | ___ Other Tort (describe below) |
| ___ Other Professional Malpractice | ___ Redhibition |
| ___ Maritime | ___ Class action (nature of case) |
| ___ Wrongful Death | ✓ Hurricane Litigation |
| ___ General Negligence | |

Please briefly describe the nature of the litigation in one sentence of additional detail:

Following the completion of this form by counsel, counsel's representative, or by the self-represented litigant, this document will be submitted to the Office of the Judicial Administrator, Supreme Court of Louisiana, by the Clerk of Court.

Name, address and contact information of person completing form:

Name __Michael R. C. Riess__     Signature _____

Address __1100 Poydras Street, Suite 1100, New Orleans, LA 70163__

Phone number: __504-588-3300__     E-mail address: __MRiess@rllaw.com__

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

JON A. GEGENHEIMER

24th JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 834-598                                          DIVISION: "A"

ESPLANADE 2018 PARTNERS LLC

VERSUS

MT. HAWLEY INSURANCE COMPANY

FILED: _____

_____
DEPUTY CLERK

PETITION FOR DAMAGES
AND REQUEST FOR NOTICE UNDER LSA-C.C.P. ART. 1572

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Esplanade 2018 Partners LLC (hereinafter, "Plaintiff"), who respectfully represents the following:

PARTIES

1.

Plaintiff herein is Esplanade 2018 Partners LLC, a limited liability company authorized to do business in the State of Louisiana, with its primary place of business in the Parish of Jefferson, State of Louisiana.

2.

Made Defendant herein is Mt. Hawley Insurance Company (hereinafter, "Defendant Insurer" or "Defendant"), a foreign insurer licensed to issue insurance policies, and in fact, issuing insurance policies in the State of Louisiana at all times relevant herein.

JURISDICTION AND VENUE

3.

This Court has jurisdiction over the matters complained of herein by virtue of Louisiana Code of Civil Procedure article 2. Venue in this Court is proper pursuant to Louisiana Code of Civil Procedure articles 42, 73, 74 and 76.1.

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS



4861-4878-6621, v. 1
01/10/2023 13:20:18 CERTIFIED TRUE COPY - Pg:1 of 19 - Jefferson Parish Clerk of Court - ID:233737
JON A. GEGENHEIMER

## GENERAL BACKGROUND

**4.**

At times relevant herein, Plaintiff owned the movable and immovable property located in the Parish of Jefferson, at municipal address: 3500 N. Causeway Blvd., Metairie, LA 70002 (hereinafter, "Subject Property" or "Building").

**5.**

The Subject Property is a fourteen (14) story building tower comprised of executive offices completed in 1972, with an additional two (2) story roof penthouse, and an adjoining building known as the "smoker shack". The building's entrance has a stone panel two (2) story curtain wall system. The building's envelope underwent major renovations in 1983 and 2002; and renovations and upgrades to the common spaces and elevators occurred in 2018. The building's roof systems consist of a penthouse roof, main roof, north podium roof, south podium, a canopy roof, and a utility roof. All of the roofs are covered with a modified bitumen membrane.

**6.**

On or before April 11, 2021, Plaintiff entered into a contract of insurance with Defendant Insurer for the Subject Property known as a Commercial Property Insurance Policy, and identified as Policy Number MCP0165705 for the policy period from April 11, 2021 to April 11, 2022 (hereinafter "Subject Policy" or "Policy"); the Policy's total limit of coverage was $34,250,000, including the following:

   a.   $30,500,000 in Building Coverage, with valuation specified at Replacement Cost Value ("RCV"); *and*

   b.   $3,750,000 in Business Income/Rental Value (with Extra Expense) Coverage, with valuation specified at Actual Loss Sustained ("ALS").

**7.**

The Policy's Declarations – Deductible Addendum, stated in pertinent part, as follows:

**PERIL DEDUCTIBLE(S)**

$5,000 Per Occurrence for All Covered Perils, except:
2.00% of the Total Insurable Values Per Building (including time element if applicable) at the time of loss or damage subject to a minimum of $25,000 Per Occurrence for Named Storm
$25,000 Per Occurrence for Windstorm or Hail

Total Insurable Values is defined as the full value of covered property, including time element if applicable, subject to the valuation terms and

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

conditions of the policy. Total Insurable Values are calculated at the time
of loss or damage.

**8.**

At its inception, the total annual premium for the Subject Policy, including taxes and fees, was $137,670.15.

**9.**

Subsequently, in exchange for Plaintiff's payment of $9,309.63 in additional premiums, taxes and fees, a Change Endorsement with an effective date of August 6, 2021 was added to the Policy, whereby the above-stated total limit of coverage was increased from $34,250,000, to $35,725,000, including:

    a.    $31,000,000 in Building Coverage, with valuation specified at RCV; *and*

    b.    $4,725,000 in Business Income/Rental Value (with Extra Expense) Coverage, with valuation specified at ALS.

**10.**

Plaintiff has paid all premiums associated with the Subject Policy when due in a timely manner, and without delay.

**11.**

On or about August 29, 2021, Hurricane Ida (hereinafter "Ida"), a deadly and destructive Category 4 storm, made landfall on the Louisiana coast, near Port Fourchon. As expected, Ida produced a substantial amount of severe wind and precipitation for an extended duration of time, and caused significant damage to coastal areas of Louisiana, including Jefferson Parish, and the Subject Property.

**12.**

The intensity and devastation of Ida caused a significant number of fallen and damaged trees, electrical lines, as well as wind driven debris in coastal areas of Louisiana and the loss of primary electrical power to parts of Jefferson Parish for several weeks.

**13.**

In compliance with the terms and conditions of the Subject Policy, after Hurricane Ida, Plaintiff attempted to mitigate the loss as soon as possible, by investigating the full scope of damage, requesting repair estimates from local contractors and repairing Ida-related damages.

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

**14.**

Plaintiff is entitled to recovery of all amounts due under the Policy for the damages to the Subject Property caused by Hurricane Ida, including without limitation, under the Building and Business Income/Rental Value (with Extra Expense) Coverages, for the physical damage to the Building and business personal property, recoverable depreciation, and any increased cost of construction to put the Subject Property back in its pre-loss condition, as well as for the lost business income and extra expenses incurred, as a result of Hurricane Ida and the damages to the Subject Property.

**15.**

Given the post-Ida condition of the Subject Property, and the need to return to normal business operations, Plaintiff has begun strategically making necessary repairs to mitigate the loss and to restore the it to its pre-loss condition.

**16.**

Despite being aware of the existence of covered damages to the Subject Property and despite having had ample time to determine the scope of those damages, Defendant Insurer has failed to tender any amount in payment for undisputed damages caused by Ida.

**17.**

Louisiana Law provides claims handling timelines that are strictly construed under Louisiana law.

**18.**

Louisiana R.S. 22:8689(A) reflects the fundamental public policy of the state of Louisiana against such forum selection clauses in insurance contracts that deprive the courts of this state of the jurisdiction or venue against the insurer. *Krishana, Inc. v. Mt. Hawley Ins. Co.*, 2:21-cv-03031, 2022 WL 266713.

**19.**

Under La. Stat. Ann. §22:1892(A)(1), insurers must pay the amount of any claim due to any insured within thirty (30) days after receipt of satisfactory proof of loss from the insured or any party in interest. Under La. Stat. Ann. §22:1892(A)(4), all insurers must make a written offer

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

01/10/2023 13:20:18 CERTIFIED TRUE COPY - Pg:4 of 19 - Jefferson Parish Clerk of Court - ID:233737
JON A. GEGENHEIMER
4861-4678-6621, v. 1

to settle any property damage claim, within thirty (30) days after receipt of satisfactory proof of loss of that claim.

**20.**

The arbitrary, capricious, or without probable cause failure to comply with La. Stat. Ann. §22:1892(A)(1) and §22:1892(A)(4) subjects the insurer to a penalty, in addition to the amount of loss, of fifty percent on the amount found to be due from the insurer to the insured or $1,000, whichever is greater. If partial payment of tender is made, the penalty is fifty percent of the difference between the amount paid or tendered and the amount due. These penalties are in addition to reasonable attorney fees and costs. La. Stat. Ann. §22:1892(B)(1).

**21.**

Under La. Stat. Ann. §22:1973(A), insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims with the insured. Failing to pay the amount of any claim due to any person insured by the contract within sixty (60) days after satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause is a breach of the insurer's affirmative duty. La. Stat. Ann. §22:1973(B)(5).

**22.**

In addition to any general or specific damages to which the insured is entitled to, a breach of the 60-day timeline subjects the insurer to penalties in an amount not to exceed two (2) times the damages sustained or $5,000, whichever is greater. La. Stat. Ann. §22:1973(C).

**23.**

An insurer has satisfactory proof of loss once it has sent an adjuster to inspect the property, even if the adjuster provides an incomplete report, because the insurance company had the opportunity to discover the extent of the damages. As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial. *Louisiana Bag Co., v. Audubon Indem. Co.,* 2008-0453 (La. Supreme Ct. 12/2/08), 999 So. 2d 1104. *J.R.A. Inc. v. Essex Ins. Co.,* 2010-0797 (La. App. 4 Cir. 5/27/11, 32–33); 72 So. 3d 862, 881 (citing *Paul v. Nat'l Am. Ins. Co.,* 361 So. 2d 1281, 1284–85 (La. Ct. App. 1978)).

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

JON A. GEGENHEIMER
4861-4678-6621, v. 1

**24.**

The statutory timeline starts from the initial inspection and not from any final report by the insurer. *Aghighi v. Louisiana Citizens Prop. Ins. Corp.*, 2012-1096 (La. App. 4 Cir. 6/19/13), 119 So. 3d 930.

**25.**

Despite being aware of the critical damage to the structure covered under the subject policy, Defendant Insurers did not provide any payment or advance for undisputed covered damages within 30 days from its initial inspection.

**26.**

Defendant Insurer has unjustifiably failed and/ or refused to perform its obligations under the policy and Louisiana law, and has wrongly and unfairly failed to issue payment on the Plaintiff's claim.

**27.**

Plaintiff has exhibited immediate and continuous cooperation with the Defendant Insurer in seeking to resolve its claim.

**28.**

As a result of Defendant Insurer's failure to properly, timely, and adequately adjust Plaintiff's claims resulting from Ida, Plaintiff have suffered damages/losses for the following, non-exclusive items:

    a.    Uncompensated covered and resultant damages to Plaintiff's immovable property located at 3500 N. Causeway Blvd., Metairie, LA 70002;

    b.    Uncompensated covered and resultant damages to Plaintiff's movable property located at 3500 N. Causeway Blvd., Metairie, LA 70002;

    c.    Uncompensated covered and resultant lost business income;

    d.    Uncompensated covered and resultant lost rental value;

    e.    Uncompensated covered and resultant extra expenses;

    f.    Resultant financial losses; *and*

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

6

01/10/2023 13:20:18 CERTIFIED TRUE COPY - Pg:8 of 19 - Jefferson Parish Clerk of Court - ID:233737
4861-4678-6621, v. 1
JON A. GEGENHEIMER

g.   Other damages reasonable upon the premises to be proven at a trial on the merits herein, as well as attorney's fees, costs and interest from the date of judicial demand.

**29.**

The failure of Defendant Insurer to timely and properly adjust and pay Plaintiff's claims has been arbitrary, capricious, and/or without probable cause, entitling Plaintiff to penalties and attorney's fees. Additionally, Defendant Insurer has breached its statutory duty of good faith and fair dealing and its affirmative duties to adjust claims fairly and promptly, and to make a reasonable effort to settle claims with its insured (Plaintiff herein).

**FACTS GIVING RISE TO PLAINTIFF'S CAUSES OF ACTION**

**30.**

As indicated above, the Subject Property was significantly damaged by the severe wind and rain that accompanied Hurricane Ida; in addition, a substantial amount of Plaintiff's movable property was damaged and/or destroyed by the resultant rainwater intrusion into the interior of the Subject Property. The damage from wind and rain included without limitation, damage to all of the modified bitumen and related roofing systems, curtain wall systems, glazing/window systems, structural components of the storefront systems, revolving entry doors building signs, exterior façade and signage, interior finishes, floors and ceilings, as well as mechanical equipment, among other items.

**31.**

On September 7, 2021 after Ida, Defendant Insurer was informed of the extensive damage to the Subject Property. Subsequently, Defendant Insurer assigned claim number 00501070 (hereinafter "Subject Claim" or "Claim") was opened with a date of loss of August 29, 2021.

**32.**

On or about September 14, 2021, Defendant Insurer performed its initial visual inspection of the Subject Property through its hired adjuster, J.S. Held (hereinafter "JSH"). Subsequently, a report was issued estimating the Replacement Cost Value (hereinafter "RCV") of the damages to the Subject Property at only $176,777.56, including: $2,080.20 in roofing repairs; $8,183.80 for

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div-A Atty:002073 MICHAEL R RIESS

4861-4678-6621, v. 1

cleaning; $3,830.44 for contents manipulation; $6,551.89 for drywall; and $62,600.49 for floor coverings. After subtracting a deductible calculated at $816,623.08, the estimate stated a net claim of $0.00.

**33.**

On October 3, 2021, Defendant Insurer, through JSH, conducted a re-inspection of the Subject Property, following which a revised estimate was prepared identifying Plaintiff's total Building damages in the amount of $285,810.23 (RCV).

**34.**

On November 30, 2021, Plaintiff provided Defendant Insurer a spreadsheet of its current total estimate to repair and restore the Subject Property. This correspondence included, but was not limited to, notice to the Defendant Insurer that there was damage to the Subject Property's roof, building signs, exterior facade, windows, interior floors and ceilings, mechanical equipment among other items.

**35.**

On or about January 13, 2022, Defendant Insurer, through JSH, visually reinspected the damages to the Subject Property to further evaluate the damages to the Subject Property caused by Hurricane Ida.

**36.**

On February 24, 2022, Plaintiff provided a Sworn Statement in Proof of Loss to Defendant Insurer, in compliance with the timeline for doing so under the Policy, stating the total amount of damages had yet to be determined.

**37.**

On March 17, 2022, Defendant insurer sent a letter to Plaintiff denying payment and stating that its evaluation was that the Subject Property's roof did not require replacement.

**38.**

On June 12, 2022, a joint inspection was held at the Subject Property with representatives of Plaintiff present, including counsel for Plaintiff, Altieri Insurance Consultants ("Altieri"), and Childress Engineering Services ("CES"), as well as representatives of Defendant Insurer present, through Engle Martin & Associates and JSH.

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

**39.**

Following the June 12, 2022 inspection, CES prepared a report of its conclusions. Therein, CES stated it observed storm damages throughout the property and building envelope, and noted that these damages have led to damages to the interior finishes. CES' additional observations and Conclusions, among others, included the following:

    a.    All the modified bitumen roofing systems display windborne debris impact and wind uplift damages throughout. Remaining debris was observed at all roofs excluding the utility and penthouse roofs, which are not fully enclosed by parapets.

    b.    Temporary repairs performed were noted at all roofing systems. Ida winds displaced a section of louver at the building chiller and all but one of the large building numbers at the penthouse. These displacements caused further damages to the roofing membranes as displaced pieces and components became windborne debris. The aged condition of the MB membrane, prior repairs, and sealants has also been exploited by the storm, leading to paths of water intrusion.

    c.    Additionally, water intrusion and damage to the windows occurred on all floors (3-14) containing fixed glass panes that require extensive reglazing and /or replacement due to flying debris caused by Ida.

**40.**

Subsequently, on September 7, 2022, Plaintiff submitted a Proof of Loss to Defendant Insurer for a Net Amount Claimed of $4,681,844.15, along with supporting documentation including: and an Xactimate insurance estimate setting forth all details of the Net Amount Claimed, all Invoices documenting the Actual Cost Incurred for repairs to date, a report discussing the window/glazing damages to the Building, with related spreadsheets and diagrams, Contractor's quotes to address the window/glazing damages, and roofing systems damages, as well as an engineering report relating the damages to the Subject Property to Hurricane Ida.

**41.**

On October 5, 2022, Defendant Insurer responded asserting the entirety of the window/glazing damages were new, and therefore required a reinspection. When Plaintiff responded asking about the remainder of the damages set forth in the September 7, 2022 Proof of

01/10/2023 13:20:18 CERTIFIED TRUE COPY - Pg:9 of 19 - Jefferson Parish Clerk of Court - ID:233737
4861-4678-6621, v. 1

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

Loss, Defendant Insurer provided an updated version of its prior JSH damage estimate on October 7, 2022, and stated, "[t]he current Replacement Cost Value amount totals $430,628.02 which falls below the 2% Named Storm Deductible of $816,623.08."

**42.**

Defendant Insurer's October 7, 2022 statement that Plaintiff's damages still did not exceed the deductible was effectively a rejection of Plaintiff's September 7, 2022 Proof of Loss.

**43.**

The JSH estimate totals are significantly less than what would be required to repair the Subject Property to its pre-Ida loss condition and to repair or replace Plaintiff's movable property with items of like kind and quality.

**44.**

As a result of Defendant Insurer's initial inspection, multiple reinspections, and Plaintiff's submissions of satisfactory proof of loss, Defendant Insurer knew or should have known of Plaintiff's losses, which, according to estimates provided to Defendant Insurer, exceeded the amounts identified by Defendant Insurer's adjusters, and which should have been paid as covered damages under the Subject Policy.

**45.**

Defendant Insurer has failed to gather the facts and information necessary to timely properly adjust Plaintiff's, its insured, loss of use claim.

**46.**

Defendant Insurer failed to issue payment thereon within thirty (30) days thereafter, in violation of LSA-R.S. 22:1892(A)(4) despite having received Plaintiff's Proof of Loss by way of: (a) its own investigation through its hired adjuster JSH, (b) documentation submitted by/ on behalf of plaintiff, (c) supplemental documentation submitted by Plaintiff.

**47.**

Plaintiff also contends that Defendant Insurer's alleged ignorance of the full extent of Plaintiff's losses, and multiple requests for reinspections, are no defense, as it knew or should have known of the full extent of Plaintiff's losses as early as its inspections on September 14, 2021 or November 30, 2021, or even its most recent reinspection on June 12, 2022, but in no event later

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

JON A. GEGENHEIMER
4861-4678-6621, v. 1

than September 7, 2022, when it received Plaintiff's Sworn Statement in Proof of Loss with a Net Amount Claimed of $4,681,844.15 together with all necessary supporting documentation, as discussed above.

### 48.

Plaintiff further contends that in violation of La. Rev. Stat. §§ 22:41(14)-(16) and 22:1892(A)(5) that did not within fifteen (15) days of the Insured's multiple requests to provide a copy of the field adjuster's report.

### 49.

Plaintiff through undersigned Counsel on September 7, 2022 made written demand for the entirety of the unpaid covered damages set forth in the also thereto attached Sworn Statement in Proof of Loss for payment of the full undisputed portion(s), and a written offer to settle the reminder, within 30 days from the date of this correspondence, as required under La. Rev. Stat. Ann § 22:1892.

### 50.

As of the date of filing of the present Petition, Defendant Insurer has neither taken appropriate, nor timely steps to adjust and adequately pay Plaintiff's claim and to restore the Subject Property to its pre loss condition resulting from Ida.

### 51.

Further, Defendant Insurer has continuously responded self-servingly to Plaintiff in an attempt to frame correspondence with Plaintiff as violative of policy provisions while being and clearly acting in bad faith not with the goal of timely adjusting the claim fairly, but rather with the goal of obtaining a pretextual basis to deny the subject claim for non- cooperating with the Defendant Insurer.

### 52.

As such, Defendant Insurer is liable to Plaintiff for the entirety of the unpaid damages covered under the subject policy, as well as, for the mandatory penalties set forth in LSA-R.S. 22:1892, the resultant damages recoverable under LSA-R.S. 22:1973(A), and the discretionary penalties recoverable under LSA-R.S. 22:1973(C), together with attorney's fees and costs

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

recoverable under LSA-R.S. 22:1892(B)(1), as well as interest from the date of judicial demand, and any other damages reasonable upon the premises and proven at trial.

**53.**

Plaintiff has continuously cooperated with Defendant Insurer, and amicable demand has been made upon Defendant Insurer for reasonable compensation on multiple occasions, to no avail.

**54.**

Despite multiple breaches by Defendant Insurers, Plaintiff has continuously cooperated with Defendant Insurer and given Defendant Insurer multiple opportunities to properly observe the extensive loss due to Ida and adjust Plaintiff's claim accordingly and fairly.

**CAUSES OF ACTION AGAINST DEFENDANT INSURER**

A.   LA. REV. STAT. § 22:1892

**55.**

Plaintiff repeats and re-alleges all foregoing paragraphs.

**56.**

Plaintiff maintains that Defendant Insurer's conduct, as described herein above, violated LSA-R.S. 22:1892(A)(1), '(3), and '(4) because Defendant Insurer failed to pay the amount of Plaintiff's claims (for the damages to Plaintiff's Home) within thirty (30) days after receipt of satisfactory proof of loss, failed to initiate loss adjustment within thirty (30) days after receiving notification of Plaintiff's losses, and/or failed to make a written offer to settle Plaintiff's property damage claims within thirty (30) days after its receipt of additional satisfactory proof of loss of those claims.

**57.**

As a result of Defendant Insurer's actions, inaction and failures, which were arbitrary capricious and/or without probable cause, Defendant Insurer is subject to a mandatory penalty, in addition to the amount of Plaintiff's loss, of fifty percent (50%) damages on the amount found to be due (i.e., the difference between the amount paid or tendered, and the amount found to be due) from Defendant Insurer to Plaintiff, or two thousand five hundred dollars ($2,500.00), whichever is greater, payable to Plaintiff, as well as reasonable attorney's fees and costs, as set forth in LSA-R.S. 22:1892(B)(1).

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

B.   BAD FAITH: LA. REV. STAT. § 22:1973

58.

Plaintiff repeats and re-alleges all foregoing paragraphs.

59.

Plaintiff maintains that Defendant Insurer's conduct, as described herein above, constitutes multiple breaches of the following duties to the Plaintiff: (1) the duty of "good faith and fair dealing;" (2) the "affirmative duty to adjust claims fairly and promptly;" and (3) the "affirmative duty" to "make a reasonable effort to settle claims with the insured," as set forth in LSA-R.S. 22:1973(A).

60.

Plaintiff further maintains that Defendant Insurer may have "knowingly committed or performed" one or more of the following acts, thereby constituting one or more breach(es) of Defendant Insurer's statutory duties – set forth in LSA-R.S. 22:1220(A) – to Plaintiff: (1) misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue; (2) failing to pay a settlement within (30) days after an agreement is reduced to writing; (3) denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of the insured; (4) failing to pay the amount of any claim due any person insured by the contract within sixty (60) days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause, and/or (5) failing to pay claims pursuant to LSA-R.S. 22:1893, when such failure is arbitrary, capricious, or without probable cause.

61.

Pursuant to LSA-R.S. 22:1973(A), as a result of Defendant Insurer's aforementioned conduct, Defendant Insurer "shall be liable for any damages sustained as a result of the breach," including, but not limited to special damages (i.e., resultant financial losses) and general damages (i.e., for mental anguish and/or emotional distress).

62.

In addition to the general and special damages to which Plaintiff asserts they are entitled in the foregoing paragraphs for Defendant Insurer's breaches of the statutorily imposed duties

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

(described herein above), and as evidenced by Defendant Insurer's actions, as set forth herein above, Plaintiff seeks an award of penalties assessed against Defendant Insurer, pursuant to LSA-R.S. 22:1973(C), "in an amount not to exceed two times the damages sustained or five thousand dollars ($5,000.00), whichever is greater."

C.   LA. REV. STAT. §§ 22:1896 AND '1964

### 63.

Plaintiff repeats and re-alleges all preceding paragraphs.

### 64.

Plaintiff maintains that Defendant Insurer's actions and/or inactions, as described herein above, were both violative of Plaintiff's right to transparency and integrity in the adjustment of Plaintiff's claims at issue herein, and constituted unfair or deceptive methods, acts and/or practices, all as more fully set forth in LSA-R.S. 22:1896 and LSA-R.S. 22:1964, respectively.

### 65.

Plaintiff maintains that Defendant Insurer failed on multiple occasions, as described herein above, to respond to all inquiries or requests from Plaintiff, within fourteen days (14) of Plaintiff's inquiries or requests, as required by LSA-R.S. 22:1896(A).

### 66.

Plaintiff further maintains that Defendant Insurer failed on multiple occasions and in multiple ways, as described herein above, to provide prompt adjustment by a qualified adjuster, pursuant to the provisions of LSA-R.S. 22:1661 *et seq.*, the Louisiana Claims Adjuster Act, as required by LSA-R.S. 22:1896(B).

### 67.

Plaintiff further maintains that Defendant Insurer, through its actions, inactions, and failures, as described herein above, may have employed one or more unfair claim settlement practices, including, without limitation, one or more of the acts listed in LSA-R.S. 22:1964(14)(a-o).

### 68.

Plaintiff maintains the volume and frequency with which Defendant Insurer committed or performed the actions, inactions, and/or failures referenced herein above, is indicative of these

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

4861-4678-6621, v. 1
JON A. GEGENHEIMER

actions, inactions, and/or failures, being general business practices; and Defendant Insurer is therefore subject to the provisions of LSA-R.S. 22:1964 *et seq.*, the Unfair Trade Practices Act, including all appropriate penalties, sanctions, and other corrective actions set forth therein.

**69.**

As a result, Defendant Insurer is liable for all damages occasioned by its violations, both specific and general, as well for attorney's fees, costs, interest, and penalties; all of which is in addition to the amounts for which Defendant Insurer is liable to Plaintiff for the unpaid losses/damages due under the Subject Policy.

**D.   BREACH OF CONTRACT**

**70.**

Plaintiff repeats and re-alleges all preceding paragraphs.

**71.**

Plaintiff maintains that Defendant Insurer's conduct constitutes a breach of the contract as embodied by the Subject Policy by way of the following, non-exclusive list of acts: (1) failing to properly train its adjusters and agents; (2) failing to provide its adjusters and agents with proper uniform materials with which to properly evaluate claims; (3) failing to provide a proper means to facilitate contact between the Plaintiff and the Defendant Insurer; (4) instructing its adjusters and agents to undervalue the Plaintiff's losses; (5) instructing its adjusters and agents to delay the processing of the Plaintiff's claim; (6) instructing its adjusters and agents to engage in multiple, unnecessary, and time consuming evaluations of the Plaintiff's claims; and (7) any and all additional misconduct as becomes known before trial.

**72.**

As a result of its misconduct, Defendant Insurer is liable to Plaintiff for all damages occasioned by the breach, both specific and general, including, attorney's fees, costs, interests, and penalties in accordance with Louisiana Law; all of which is in addition to the amounts for which Defendant Insurer is liable to Plaintiff for the unpaid losses/ damages that are covered under Plaintiff's subject policy.

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

## PLAINTIFFS' CLAIMS FOR DAMAGES

### 73.

Because of Defendant Insurer's failure to properly and timely adjust Plaintiff's claim, the Plaintiff have sustained damages, and continue to sustain damages/ losses for the following nonexclusive items::

    a.    Uncompensated covered and resultant damages to Plaintiff's immovable property located at 3500 N. Causeway Blvd., Metairie, LA 70002;

    b.    Uncompensated covered and resultant damages to Plaintiff's movable property located at 3500 N. Causeway Blvd., Metairie, LA 70002;

    c.    Uncompensated covered and resultant lost business income;

    d.    Uncompensated covered and resultant lost rental value;

    e.    Uncompensated covered and resultant extra expenses;

    f.    Resultant financial losses;

    g.    Attorney's fees;

    h.    Litigation Costs;

    i.    Mandatory bad faith penalties under LSA-R.S. 22:1892;

    j.    Discretionary bad faith penalties under LSA-R.S. 22:1983;

    k.    Other damages reasonable upon the premises to be proven at a trial on the merits herein; *and*

    l.    Interest from the date of judicial demand.

### REQUEST FOR JURY TRIAL

### 74.

Plaintiff requests a trial by jury in accordance with LSA-C.C.P. art. 1733.

### REQUEST FOR NOTICE

### 75.

In accordance with LSA-C.C.P. art. 1572, Plaintiff requests that this Honorable Court give written notice by certified mail, at least ten days in advance of the date fixed for trial or hearing of the case, whether on exceptions, motions, rules, or the merits. Plaintiff also requests immediate notice of all orders or judgments, whether interlocutory or final, made or rendered in this case upon

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

JON A. GEGENHEIMER

4851-4678-6621, v. 1

01/10/2023 13:20:18 CERTIFIED TRUE COPY - Pg:16 of 19 - Jefferson Parish Clerk of Court - ID:233737

the rendition thereof, as provided by LSA-C.C.P. arts. 1913 and 1914, including notice of judgment, in the event this case is taken under advisement, or if the judgment is not signed at the conclusion of the trial.

<div align="center">

**PRAYER FOR RELIEF**

</div>

**WHEREFORE**, Plaintiff, Esplanade 2018 Partners LLC, through undersigned counsel, prays that, after due proceedings and a jury trial are conducted, and after a verdict in its favor, that this Honorable Court enter judgment in its favor, and against the Defendant, Mt. Hawley Insurance Company , for all damages discussed herein above, including but not limited to, all special and general damages (including all such damages previously incurred, those presently being incurred, and those that will be incurred in the future), as well as, any and all equitable and punitive relief appropriate, including but not limited to, attorney's fees, costs, penalties, and interest from the date of judicial demand.

Plaintiff further prays, in accordance with LSA-C.C.P. art. 1572, that this Honorable Court give written notice by certified mail, at least ten days in advance of the date fixed for trial or hearing of the case, whether on exceptions, motions, rules, or the merits.  Plaintiff also requests immediate notice of all orders or judgments, whether interlocutory or final, made or rendered in this case upon the rendition thereof, as provided by LSA-C.C.P. arts. 1913 and 1914, including notice of judgment, in the event this case is taken under advisement, or if the judgment is not signed at the conclusion of the trial.

<div align="center">

*[Signature Block and Service Instructions on Next Page]*

</div>

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS

17

01/10/2023 13:20:18 CERTIFIED TRUE COPY - Pg:17 of 19 - Jefferson Parish Clerk of Court - ID:233737
JON A. GEGENHEIMER
4861-4678-6621, v. 1

Respectfully submitted,

RIESS LeMIEUX, LLC

By: _____

MICHAEL R. C. RIESS, #2073
ROBERT W. TSCHIRN, #31994
ALEX S. DUNN JR., #33542
1100 Poydras Street, Suite 1100
New Orleans, Louisiana 70163
Telephone: (504) 581-3300
Facsimile:  (504) 581-3310
Email:      MRiess@RLLaw.com
            RTschirn@RLLaw.com
            ADunn@RLLaw.com
*Attorneys for Plaintiff,*
*Esplanade 2018 Partners, LLC*

<u>PLEASE SERVE:</u>

**MT. HAWLEY INSURANCE COMPANY**
*through its agent for service:*
Louisiana Secretary Of State
8585 Archives Ave.
Baton Rouge, LA 70809

Rec'd via mail 12/1/22
SOS | Ck# 9813 | 50.00
EBS | Ck# 9814 | 40.44
SMF | Ck# 9815 | 62.50

24th E-Filed: 11/02/2022 14:15 Case: 834598 Div:A Atty:002073 MICHAEL R RIESS



**Mandy Plaisance**

| | |
|---|---|
| **From:** | Mandy Plaisance |
| **Sent:** | Thursday, November 3, 2022 11:07 AM |
| **To:** | 'cduhe@RLLAW.COM'; 'shareaccount@RLLaw.com'; 'lbarre@RLLaw.com'; 'ttate@rllaw.com' |
| **Subject:** | EFile Case: 834598 |

In order to fully process your e-file we will need a service check made payable to East Baton Rouge Sheriffs Office for $40.44 and a check made payable to Secretary of State for $50.00.

## Effective Immediately;

On all Hurricane Ida suits, a special master fee will be collected. The plaintiff is responsible to pay $62.50. This is a one-time fee per case. It needs to be a separate check payable to "Special Master Fee".

Please contact the civil filing department regarding the document: 221102 Esplanade  Petition for Damages.pdf e-filed on 11/2/2022 2:15:05 PM.

*Rec'd via mail 12/1/22*

*SOS | CK# 9813 | 50.00*

*EBR | CK# 9814 | 40.44*

*SMF | CK# 9815 | 62.50*

1



SERVICE COPY · RETURN COPY

(101) CITATION: PETITION FOR DAMAGES AND REQUEST FOR NOTICE; EXHIBITS: STANDING CASE MANAGEMENT ORDER / ORDER FOR DISASTER DISCOVERY PROTOCOLS/ INTERIM PROTECTIVE ORDER

221205-4032-7

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

ESPLANADE 2018 PARTNERS, LLC
   versus
MT. HAWLEY INSURANCE COMPANY

Case: 834-598   Div: "A"
P 1 ESPLANADE 2018
PARTNERS, LLC

To: MT. HAWLEY INSURANCE COMPANY
THROUGH ITS AGENT FOR SERVICE:
LOUISIANA SECRETARY OF STATE
8585 ARCHIVES AVE
BATON ROUGE LA 70809

#9813 $50.00 S/S
#9814 $40.44 EBR

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR DAMAGES AND REQUEST FOR NOTICE of which a true and correct copy accompanies this citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of Louisiana, **within (21) CALENDAR days after the service hereof, under penalty of default.**

This service was requested by attorney MICHAEL R. RIESS and was issued by the Clerk of Court on the 5th day of December, 2022.

/s/ Donna G. Muscarello
Donna G. Muscarello, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court



_____SERVICE INFORMATION_____

(101) CITATION: PETITION FOR DAMAGES AND REQUEST FOR NOTICE; EXHIBITS: STANDING CASE MANAGEMENT ORDER / ORDER FOR DISASTER DISCOVERY PROTOCOLS/ INTERIM PROTECTIVE ORDER

221205-4032-7

Received:_____ Served:_____ Returned:_____

Service was made:
_____ Personal       _____ Domiciliary _____

Unable to serve:
_____ Not at this address   _____ Numerous attempts _____ times
_____ Vacant              _____ Received too late to serve
_____ Moved              _____ No longer works at this address
_____ No such address     _____ Need apartment / building number
_____ Other _____

Service: $_____ Mileage: $_____ Total: $_____

Completed by:_____ #_____
              Deputy Sheriff
Parish of: _____

Imaged 12/05/2022 09:22 - Signed: Deputy Clerk of Court /s/ Donna G. Muscarello



[ SERVICE COPY ]  7  [ RETURN COPY ]

(101) CITATION: PETITION FOR DAMAGES AND REQUEST FOR
NOTICE; EXHIBITS: STANDING CASE MANAGEMENT ORDER / ORDER
FOR DISASTER DISCOVERY PROTOCOLS/ INTERIM PROTECTIVE
ORDER

221205-4032-7

FILED FOR RECORD 12/29/2022 09:42:08
Dianne A. Everage DY CLERK
JEFFERSON PARISH LA

**24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA**

ESPLANADE 2018 PARTNERS, LLC
versus
MT. HAWLEY INSURANCE COMPANY

Case: 834-598   Div "A"
P 1  ESPLANADE 2018
PARTNERS, LLC

To:  MT. HAWLEY INSURANCE COMPANY
THROUGH ITS AGENT FOR SERVICE:
LOUISIANA SECRETARY OF STATE
8585 ARCHIVES AVE
BATON ROUGE LA 70809

#9813 $50.00 S/S
#9814 $40.44 EBR

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES AND REQUEST FOR NOTICE of which a true and correct copy accompanies this
citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial
District Court in and for the Parish of Jefferson, State of Louisiana, **within (21) CALENDAR
days after the service hereof, under penalty of default.**

This service was requested by attorney MICHAEL R. RIESS and was issued by the Clerk of
Court on the 5th day of December, 2022.

I made service on the named party through the

Office of the Secretary of State on

DEC 1 4 2022

by tendering a copy of this document to:
JULIE NESBITT

DY. M. LOCKWOOD #0603
Deputy Sheriff, Parish of East Baton Rouge, LA

/s/ Donna G. Muscarello
Donna G. Muscarello, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

SERVICE INFORMATION

(101) CITATION: PETITION FOR DAMAGES AND REQUEST FOR
NOTICE; EXHIBITS: STANDING CASE MANAGEMENT ORDER / ORDER
FOR DISASTER DISCOVERY PROTOCOLS/ INTERIM PROTECTIVE
ORDER

221205-4032-7

Received:_____   Served:_____   Returned:_____

Service was made:
____ Personal          ____ Domiciliary _____

Unable to serve:
____ Not at this address       ____ Numerous attempts _____ times
____ Vacant                    ____ Received too late to serve
____ Moved                     ____ No longer works at this address
____ No such address           ____ Need apartment / building number
____ Other _____

Service: $_____   Mileage: $_____   Total: $_____

Completed by:_____ #_____
                    Deputy Sheriff
Parish of: _____

RECEIVED
DEC 12 2022
E.B.R. SHERIFF'S OFFICE



Thomas F. Donelon Courthouse : 200 Derbigny St. : Gretna LA 70053

01/12/2023 14:33:14 CERTIFIED TRUE COPY - Pg:1 of 1 - Jefferson Parish Clerk of Court - ID:235042

12170593

FILED FOR RECORD 11/03/2022 11:10:04
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STANDING CASE MANAGEMENT ORDER REGARDING
### CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA

On August 29, 2020, Hurricane Ida came ashore near Port Fourchon, Louisiana and traveled through Jefferson Parish. As a Category 4 (near 5) hurricane, it was the fifth strongest storm to ever impact the United States. Hurricane Ida tied the Last Island Hurricane in 1856 and Hurricane Laura in 2020 as the strongest to strike Louisiana, based on wind speed. The President of the United States issued a Declaration of a Major Disaster for the State of Louisiana on August 29, 2021. (*See* FEMA-4611-DR.) The Declaration expressly includes Jefferson Parish as an "adversely affected area by this major disaster."[1] Major Hurricane-force winds, with gusts in excess of 155 mph, covered the entirety of Jefferson Parish, and inflicted catastrophic damage throughout this Court's jurisdiction. Hurricane Ida may sometimes hereinafter be referred to as the "Hurricane," and the causes of action arising therefrom may sometimes be referred to as "the Hurricane Cases."

In the aftermath of this catastrophic natural disaster, this Court recognizes that it will soon preside over substantial volumes of insurance coverage-related litigation linked to the Hurricane. Additionally, and like so many other courts across the globe, this Court has faced significant challenges to conducting court business for the better part of a year, as a result of the on-going COVID-19 pandemic. The residents and businesses of Louisiana have similarly struggled to cope with the negative economic impact of COVID-19, even before Hurricane Ida.

---

[1] https://www.fema.gov/disaster-federal-register-notice/4611-dr-la-initial-notice



EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687

12/29/2021 11:17:45 CERTIFIED TRUE COPY - Pg:1 of 14 - Jefferson Parish Clerk of Court - ID:233746
01/18/2023 13:13:48 CERTIFIED TRUE COPY - Pg:1 of 14 - D Benton DEPUTY CLERK

12170593

In the weeks following Hurricane Ida, many related lawsuits will be filed and be pending before this Court. In Act 318 of the 2020 Regular Session the Louisiana Legislature amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[2]

Act 318 authorizes this Court to enter this CMO, and after consultation with and upon the recommendation of the Special Master and in consideration of the high volume of cases from Jefferson Parish in state and federal courts, this Court finds it warranted to enter this CMO to best accommodate the adjudication of Hurricane Cases in this Court.

Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the Jefferson Parish community to move forward with crucial recovery efforts, in the aftermath of Hurricane Ida, and the COVID-19 pandemic. In consideration of these aims and the law, after due consideration of the Case Management Orders and discovery protocols implemented by the 14th Judicial District Court and the U.S. District Court for the Western District of Louisiana following Hurricanes Laura and Delta, the 24th Judicial District Court issues the instant Case Management Order, to-wit:

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately applicable to all Hurricane Cases.

### SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCOVERY

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by 14th Judicial District Court and the U.S. District Court for the Western District of Louisiana following Hurricanes Laura and Delta filed in those courts. The Federal Court considered the Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey. The 14th Judicial District Court considered the Disaster Protocols implemented by the Federal Courts. These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an

---

[2] *See* La. R.S. 13:4165(F).

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12170593

expedited mediation procedure. Accordingly, December 29, 2021, this Court issued a Standing Order for Disaster Discovery Protocols in Certain Property Damage Suits Arising from Hurricane Ida ("Disaster Discovery Protocols") therefore,

IT IS FURTHER ORDERED that the Disaster Discovery Protocols Initial Discovery Protocols are deemed incorporated into this CMO *in extenso* and are applicable to all Hurricane Cases filed in this Court. The disclosures and exchange of information required by the Disaster Discovery Protocols Order issued on December 29, 2021 shall be due forty-five (45) days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline." No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 75 days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of the Court.

IT IS FURTHER ORDERED that each party shall supplement their Initial Disclosures at least fifteen (15) days prior to any scheduled mediation pursuant to the CMO.

Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure, except that requests for subpoenas and subpoenas *duces tecum* shall not be submitted during the SSP without pre-approval of the Special Master or leave of the Court.

### SECTION 2. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction, *supra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*,

IT IS FURTHER ORDERED that JONATHAN C. PEDERSEN, BLAIR C. CONSTANT and DONALD MASSEY, are hereby appointed as the Special Masters (hereinafter "Special Master") for Hurricane Cases in the 24th Judicial District Court.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12/29/2021 11:13:46 CERTIFIED TRUE COPY - Pg:3 of 14 - D.Benton DEPUTY CLERK
01/10/2023 13:29:46 CERTIFIED TRUE COPY - Pg:3 of 14 - Jefferson Parish Clerk of Court - ID:233746

12170593

As part of this appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence, and shall exercise the respective rights and responsibilities to direct the Streamlined Settlement Process ("SSP") as provided in this Order.

IT IS HEREBY FURTHER ORDERED that the Appointed Neutrals, referenced in Section 3(B)(2)(a), *infra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

A.    **The Special Master.** The Special Master shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefings, engage in discovery, and attend settlement conferences. Nothing in this part shall prevent regular formal discovery or motions to compel to be filed with and heard by the assigned District Judge.

B.    **Compensation of Special Master and Appointed Neutrals.** The Special Master and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

(1)    $400 per hour for the Special Master;

(2)    $400 per hour for the Appointed Neutrals;

(3)    $250 per case for the Special Master for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals and shall be paid by the parties at the time their respective initial pleadings are filed; and

(4)    All actual expenses of the Special Master and Appointed Neutrals, including but not limited to travel, meeting rooms and video conference means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defendant(s).

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12/28/2021 11:12:45 CERTIFIED TRUE COPY - Pg:4 of 14 - D Benton DEPUTY CLERK
01/10/2023 11:12:45 CERTIFIED TRUE COPY - Pg:4 of 14 - Jefferson Parish Clerk of Court - ID:233746

**12170593**

C.  **Role of Special Master and Appointed Neutrals**

  (1)  The Special Master and Appointed Neutrals may communicate ex parte with the Court when deemed appropriate by the Court, or the Special Master, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

  (2)  The Special Master and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

  (3)  The Special Master and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

  (4)  The Special Master may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

D.  **Notice of Opt-Out Motion to the Special Master.** Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP for good cause shown, which motion must be filed within the time delay contained in Section 3, *infra*.

  **IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master, regardless whether the motion to opt out is granted or denied.

  **IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where counsel for the party has been provided a copy of this Order). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



**12170593**

## SECTION 3. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 30 days of the filing of the defendant's responsive pleading (or within 15 days of the transmittal to their counsel of a copy of this Order, including by electronic or other means – whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process ("SSP") for good cause shown. A motion to opt-out of the SSP is not a responsive pleading for any deadline contained in this CMO. Unless the Court authorizes an opt-out, the parties shall participate in the three-stage Streamlined Settlement Process, which is described as follows:

A. **First Stage: Initial Settlement Conference with Special Master.** Within 30 days of the Disclosure Deadline in all Hurricane Cases, all parties shall participate in an informal settlement conference with the Special Master or his Deputy. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms. Counsel for each plaintiff and for each defendant must have full authority from their clients to resolve the case, who shall be readily available by telephone if circumstances for that particular settlement conference require assistance.

B. **Second Stage: Mediation.** Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The Special Master shall assign each Hurricane Case to an Assigned Neutral from the court approved list found in Paragraph B(2) of this Subsection, and it is the goal that Assigned Neutrals complete mediation within 70 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties.

    (1) **Conduct of Mediation.**

        (a) After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12170593

confidential mediation statements and the permissible number of exhibits attached thereto.

(b) Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone, if circumstances for that particular mediation require assistance.

(c) To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

(d) As part of this Streamlined Settlement Process, the attendees may each make opening statements but there shall be no live witness testimony.

(2) **Approved Neutrals.** The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

(a) Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5)(6), including:

| | |
|---|---|
| Hon. Stanwood Duval (ret.) | Hon. Jules Edwards (ret.) |
| Hon. Carolyn Gill-Jefferson (ret.) | Hon. "Rusty" Knight (ret.) |
| Hon. Cornelius Regan (ret.) | Hon.Ronald J. Sholes (ret.) |
| Hon. Franz Ziblich (ret.) | Ashley Bass, Esq. |
| Jacques Bezou, Esq. | Phillip Brickman, Esq. |
| Blair C. Constant, Esq. | Robert Raymond, Esq. |
| Michelle Craig, Esq. | Bobby M. Harges, Esq. |
| Fred Herman, Esq. | Ross Legard, Esq. |
| Donald Massey, Esq. | Jonathan Pedersen, Esq. |
| Roger A. Javier, Esq. | |

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12/29/2021 11:17:45 CERTIFIED TRUE COPY - Pg:7 of 14 - Jefferson Parish Clerk of Court - ID:233746
01/10/2023 13:20:46 CERTIFIED TRUE COPY - Pg:7 of 14 - D.Renton DEPUTY CLERK

(b)   Any person designated as a neutral pursuant to any Case Management Order that the U.S. District Court for the Eastern District of Louisiana may enter in connection with Hurricane Ida cases.

(3)   **Neutral Training.** The Special Master may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Master and his Deputy may jointly form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Master or his Deputy may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Master or his Deputy may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Master or his Deputy may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

(4)   **Neutral Reporting.** Within 5 days of the mediation date, the Neutral shall inform the Special Master of the outcome of the mediation.

(5)   **Stipulation for Mediation.** The Neutral, the Parties and counsel for the parties must execute the Stipulation for Mediation attached hereto as Exhibit A.

C.   **Third Stage: Final Settlement Conference with Special Master.** In the event a case does not settle during the Mediation Phase, the parties shall participate in a final settlement conference with the Special Master or his Deputy. The Special Master should aspire to conduct this final settlement conference within 45 days of receiving notice from the Neutral that a particular case did not settle during the mediation phase. To facilitate this final settlement conference, the Special Master or his Deputy may require the parties to submit additional mediation statements and set restrictions upon the number and type of exhibits attached thereto. The Special Master or his Deputy may also communicate with the Neutral who conducted the

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



mediation so as to facilitate a productive final settlement conference. A scheduling order will not be entered by the Court unless the Special Master or his Deputy have filed a certificate into the record attesting that all parties have participated in the final settlement conference with the Special Master or his Deputy.

D.   **Extensions of Time.**   Upon a joint request by the parties, for other good cause shown, or for case management purposes, the Special Master or his deputy may extend any deadline specified in this Order by up to 15 days.

### SECTION 4. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

A.   **Where Parties HAVE been allowed to Opt Out of the SSP.**   If any party has been permitted to opt out of the SSP following a timely motion for the same, any party requesting appointment of an Umpire shall file a motion requesting same with the case's assigned District Judge, which motion shall be set for contradictory hearing. Counsel for either or both the Insured and the Insurer may also submit a joint motion requesting appointment of an Umpire to the District Judge, who may agree to hear the motion on his or her regular docket.

B.   ***Where Parties Have NOT Opted Out of the SSP.***   In all other cases, any request for the appointment by the Court of an Umpire shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master in the same manner as provided for a discovery dispute under the SSP, and the parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at *jcpedersen@specialmasterservices.com*. The deadline may be extended by the Special Master in exceptional circumstances.

C.   ***Umpire-Only Filing.***   If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures in Subsection 4(1). Any such request shall be made in writing no later than 14

EFILE: 12/28/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12/28/2021 11:12:45 CERTIFIED TRUE COPY - Pg:9 of 14 - Jefferson Parish Clerk of Court - ID:233746
01/10/2023 11:15:46 CERTIFIED TRUE COPY - Pg:9 of 14 - D Renton DEPUTY CLERK

12170593

days following the filing of the defendant's responsive pleading, and any such motion or request for this Court's appointment of an Umpire shall be referred to the Special Master under the above captioned general docket created for the Hurricane Cases. The parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at _jcpedersen@specialmasterservices.com._ The deadline may be extended by the Special Master in exceptional circumstances.

(1)    An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

(2)    A written report and recommendation following the Umpire's appointment shall be issued to the parties, and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge following a motion filed with the assigned District Judge within seven days of transmittal of the written report.

(3)    In an Umpire Only Filing, the Special Master shall provide the report and recommendation to the parties, who will in turn provide the same to the District Judge as of the time of the issuance of the report and recommendations. Similarly, the recommendation shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the District Judge following a motion filed with the District Judge within seven days of transmittal of the written report.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687



12170593

## SECTION 5. CLERK OF COURT AND NOTICE

A.   Any Plaintiff filing a Hurricane Case should note on its cover letter to the Clerk, in *all CAPS type* and red font (if possible) that the matter is a **"HURRICANE CASE." Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.** If the Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

B.   In all Hurricane Cases, a copy of this Order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

C.   The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

D.   Any party making any filing in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at *jcpedersen@specialmasterservices.com*.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4866 PAGE 687



12/29/2021 11:17:45 CERTIFIED TRUE COPY - Pg:11 of 14 - Jefferson Parish Clerk of Court - ID:233746
01/10/2023 13:29:46 CERTIFIED TRUE COPY - Pg:11 of 14 - D. Renton DEPUTY CLERK

**12170593**

## SECTION 6. COURT SUPERVISION

The Disaster Discovery Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall become effective December 29, 2021 and shall be applicable to all cases whether then pending or thereafter filed.

**DONE AND SIGNED** this 29th day of December, 2021, at Gretna, Jefferson Parish, Louisiana.

Judge Raymond S. Steib, Jr., Div. "A"

Judge R. Christopher Cox III, Div. "B"

Judge June Berry Darensburg, Div. "C"

Judge Scott U. Schlegel, Div. "D"

Judge Frank A. Brindisi, Div. "E"

Judge Michael P. Mentz, Div. "F"

Judge E. Adrian Adams, Div. "G"

Judge Donald "Chick" Foret, Div. "H"

Judge Nancy A. Miller, Div. "I"

Judge Stephen C. Grefer, Div. "J"

Chief Judge Ellen Shirer Kovach, Div. "K"

Judge Donald A. Rowan, Jr., Div. "L"

Judge Shayna Beevers Morvant, Div. "M"

Judge Stephen D. Enright, Jr., Div. "N"

Judge Danyelle M. Taylor, Div. "O"

Judge Lee V. Faulkner, Jr., Div. "P"

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4966 PAGE 687

**12170593**

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STIPULATION FOR MEDIATION IN STREAMLINED SETTLEMENT PROGRAM

  IT IS HEREBY STIPULATED AND AGREED by and between the undersigned parties:

1. The parties have agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Standing Case Management Order (and any relevant amendments).

2. No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is executed, or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and, except as provided by Order of the Court, it shall not be revealed by the neutral unless and until the party who provided that information agrees to its disclosure.

3. The mediation process shall be considered a settlement negotiation for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. Provided, however, that evidence otherwise subject to discovery or admissible is not excluded from discovery or admission in evidence simply as a result of it having been used in connection with this mediation process.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4866 PAGE 687



12170593

4. The appointed neutral and his or her agents shall have the same immunity as judges and court employees have under Louisiana law and jurisprudence from liability for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5. The parties (i) shall not call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation, and (ii) shall not subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation, and (iii) shall not offer into evidence any statements, views or opinions of the appointed neutral.

6. Any party to this Stipulation is required to attend at least one mediation session and as may be directed by the Special Master as many other sessions thereafter as may be helpful in resolving this dispute.

7. An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

Dated:_____

_____
First Plaintiff's Signature

_____
Second Plaintiff's Signature

_____
Counsel for Plaintiff

_____
Counsel for Plaintiff

_____
Appointed Neutral

_____
First Defendant's Signature

_____
Second Defendant's Signature

_____
Counsel for Defendant

_____
Counsel for Defendant

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170593 MORTGAGE BOOK 4866 PAGE 687



12170594

FILED FOR RECORD 11/03/2022 11:10:22
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

FILED:_____

                                              _____
                                              **DEPUTY CLERK**

### STANDING ORDER FOR DISASTER DISCOVERY PROTOCOLS
### IN CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

This Court hereby issues the following Standing Order establishing protocols for discovery ("Disaster Discovery Protocols") for all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases"),

**IT IS ORDERED** that within forty-five (45) days after the defendant's submission of a responsive pleading or motion, the parties must exchange any documents or information listed in these Disaster Discovery Protocols, for any such time periods identified in these Disaster Discovery Protocols.

**IT IS FURTHER ORDERED** that all parties shall remain under an ongoing duty to supplement their responses. No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than seventy (75) days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of this Court. Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure except the restriction on subpoenas and subpoenas duces tecum articulated in Section 1 of the Standing Case Management Order Regarding Certain Property Damages Suits Arising From Hurricane Ida issued December 29, 2021.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688

12/29/2021 11:17:45 CERTIFIED TRUE COPY - Pg:1 of 8 - D Renton DEPUTY CLERK
01/10/2023 13:30:15 CERTIFIED TRUE COPY - Pg:1 of 8 - Jefferson Parish Clerk of Court - ID:233747

**12170594**

IT IS FURTHER ORDERED that a party may object to disclosure of these Disaster Discovery Materials only if the material is Privileged as that term is defined herein. Any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be resolved by contradictory motion before the assigned District Judge. The District Judge may direct that the disputed items be provided to the Court for *in camera* inspection prior to the hearing of the motion.

IT IS FURTHER ORDERED that on belief of a party that good cause exists as to why a particular case should be exempted from the Disaster Protocols, in whole or in part, that party must file their objection with the Court prior to the expiration of the 45-day period set forth herein.

## DISASTER DISCOVERY PROTOCOLS

PART 1: INTRODUCTION AND DEFINITIONS.

(1)     Statement of purpose.

a.     These Disaster Discovery Protocols apply to cases involving first-party insurance property damage claims arising from natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

b.     The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law or other

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4986 PAGE 688



12170594

applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

c. Except as modified by the Court, these Disaster Discovery Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every disaster case. The information and documents required to be produced includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues.

(2) **Definitions.** The following definitions apply to these Disaster Discovery Protocols:

a. *Claimed loss.* "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

b. *Document.* "Document" and '·documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(l )(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

c. *Event.* "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d. *Identify (Documents).* When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e. *Identify (Natural Persons).* When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. *Identify (Non-Natural Persons or Entities).* When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688


12/29/2021 13:10:15 CERTIFIED TRUE COPY - Pg:3 of 8 - D.Renton DEPUTY CLERK
01/10/2023 13:10:15 CERTIFIED TRUE COPY - Pg:3 of 8 - Jefferson Parish Clerk of Court - ID:233747

12170594

business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g.  **Insurer.** "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h.  **Insured.** "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i.  **Loss.** "Loss" means damage to the Property caused by the Event.

j.  **Other Insurance.** "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

k.  **Policy.** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

l.  **Privilege.** "Privilege" means information and documents that are protected from disclosure by the attorney-client privilege, or work-product protection, including any joint defense agreement. privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney. Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are <u>not</u> privileged and should be produced.

m.  **Property.** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

n.  **Relating to.** "Relating to" means concerning, referring, describing, evidencing, or constituting.

**(3) Instructions.**

a.  The relevant time period for this Disaster Discovery begins on the date immediately before the Event and ends on the date the lawsuit is filed for the Claimed Loss, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below.

b.  This Disaster Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim. A detailed privilege log is required as specified in this Order or any subsequent Orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the Court orders or the applicable rules require production.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688



**12170594**

c. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Discovery Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

d. For this Disaster Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Disaster Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery at a later date.

e. This Disaster Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

f. Within 14 days after the filing of a responsive pleading by the responding party, the Parties shall meet and confer on the format (e.g., searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

**PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED**

(1) Timing.

Unless the Court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court.)

(2) Information to be produced by the Insured:

a. A description of the Insured's ownership or other interest in the Property.

b. The address of the Property (or location of movable Property) on the date of the Event.

c. The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d. Identify any current mortgagee or other known lien holder.

e. A computation of each item or type of Claimed Loss, including contents claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

<div style="writing-mode: vertical">EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4866 PAGE 688</div>



f. Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g. Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h. Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

i. With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims madefor coverage by the Insured on the same Property at issue in this litigation.

j. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

k. A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

l. A general description of any known preexisting damage to the Property relating to the Claimed Loss.

m. A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

n. Identify any sale, transfer, or foreclosure of the Property after the Event.

(3) Complete and unaltered copies of the following documents to be produced by the Insured:

a. Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

b. Proofs of loss for the Claimed Loss.

c. Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

d. Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

e. Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688



12/29/2021 11:10:45 CERTIFIED TRUE COPY - Pg:8 of 9 - D.Renton DEPUTY CLERK
07/10/2023 11:10:15 CERTIFIED TRUE COPY - Pg:8 of 9 - Jefferson Parish Clerk of Court - ID:233747

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688

f.   Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

g.   The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

h.   Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

i.   If there has been an appraisal under the Policy, documents relating to the appraisal process.

j.   Any other document(s) on which the Insured relies to support the Claimed Loss.

## PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

(1)   Timing.

Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiffs claim). The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

(2)   Information to be produced by the Insurer:

a.   **If there is a dispute over coverage,** in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:
   i.   Any exclusions or exceptions, or other coverage or legal defenses;
   ii.   The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;
   iii.   Whether there is also a dispute as to the value or amount of the Claimed Loss;
   iv.   Any other basis on which coverage was denied.

b.   **If there is a dispute over all or part of the valuation,** an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:
   i.   The Insurer's understanding of the nature of the dispute;
   ii.   The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and
   iii.   The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

c.   Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.



12/29/2021 11:17:15 CERTIFIED TRUE COPY - Pg:7 of 8 - D. Renton DEPUTY CLERK
01/10/2023 13:30:15 CERTIFIED TRUE COPY - Pg:7 of 8 - Jefferson Parish Clerk of Court - ID:233747

12170594

d.    Any payments previously made under the Policy relating to the Event.

e.    A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

f.    Any other Event-related lawsuits filed for the Property or the Insured.

g.    Identify the adjuster(s) who handled the claim.

h.    Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claims decision.

i.    Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

j.    If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4)    Complete and unaltered copies of the following documents to be produced by the Insurer:

a.    The entire claim file maintained by the Insurer.

b.    The complete Policy in effect at the time of the Event.

c.    Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

d.    Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

e.    Any other evaluations of the Claimed Loss.

f.    Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

g.    Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688



Standing Order for Disaster Discovery Protocols
Hurricane Ida Litigation
8

**12170594**

Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

h.  The complete underwriting file maintained by the Insurer relating to the Property, its conditions, or coverage.

i.  Proofs of loss for the Claimed Loss.

j.  If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k.  Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane or to similar types of claims, generally such that they would therefore be applicable to the Hurricane Case including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l.  For non-NFIP Claims, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m.  Any other document(s) on which the Insurer relies to support its defenses.

**DONE AND SIGNED** this 29th day of December, 2021, at Gretna, Jefferson Parish, Louisiana.

| | |
|---|---|
| Judge Raymond S. Steib, Jr., Div. "A" | Judge Nancy A. Miller, Div. "I" |
| Judge R. Christopher Cox III, Div. "B" | Judge Stephen C. Grefer, Div. "J" |
| Judge June Berry Darensburg, Div. "C" | Chief Judge Ellen Shirer Kovach, Div. "K" |
| Judge Scott U. Schlegel, Div. "D" | Judge Donald A. Rowan, Jr., Div. "L" |
| Judge Frank A. Brindisi, Div. "E" | Judge Shayna Beevers Morvant, Div. "M" |
| Judge Michael P. Mentz, Div. "F" | Judge Stephen D. Enright, Jr., Div. "N" |
| Judge E. Adrian Adams, Div. "G" | Judge Cornelius E. Regan, *pro tempore*, Div. "O" |
| Judge Donald "Chick" Foret, Div. "H" | Judge Lee V. Faulkner, Jr., Div. "P" |



EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170594 MORTGAGE BOOK 4966 PAGE 688

Standing Order for Disaster Discovery Protocols
Hurricane Ida Litigation
9

12170595

FILED FOR RECORD 11/03/2022 11:10:37
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

#### INTERIM PROTECTIVE ORDER REGARDING
#### CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA

The Disaster Discovery Protocols for First-Party Insurance Property Damage Cases for all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases") are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. This Interim Protective Order will remain in place until the parties agree to, or the Court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to discovery conducted after the parties complete the Streamlined Settlement Program. The parties may agree to use the Interim Protective Order throughout litigation.

**IT IS HEREBY ORDERED** that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Discovery Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170595 MORTGAGE BOOK 4966 PAGE 689



Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
1

12170595

3.  If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the Court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4.  Information or documents designated as "Confidential" must not be disclosed to any person, except:

    a.  the requesting party and counsel, including in-house or agency counsel;

    b.  employees of counsel assigned to and necessary to assist in the litigation;

    c.  consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

    d.  any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information;

    e.  The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury; and

    f.  The Special Master, Deputy Special Master, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5.  Before disclosing or displaying Confidential Information to any person, a party must:

    a.  inform the person of the confidential nature of the information and documents; and

    b.  inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170595 MORTGAGE BOOK 4966 PAGE 689



01/10/2023 13:16:45 CERTIFIED TRUE COPY - Pg:2 of 4 - D.Renton DEPUTY CLERK
12/29/2021 11:17:45 CERTIFIED TRUE COPY - Pg:2 of 4 - Jefferson Parish Clerk of Court - ID:233749

12170595

6.   The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form detailed in Section 6(a), *infra.*

   6(a).   The Confidentiality Agreement shall read as follows:

   I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled [CASE CAPTION] have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

   I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.

   _____        DATED: _____
   Signature of [NAME]

   _____        DATED: _____
   Signature of Counsel

   6(b).   If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7.   The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8.   Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170595 MORTGAGE BOOK 4966 PAGE 689



Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation

3

**12170595**

9. At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information.

This Order does not diminish the right of any party to apply to the Court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order.

**DONE AND SIGNED** this 29th day of December, 2021, at Gretna, Jefferson Parish, Louisiana.

Judge Raymond S. Steib, Jr., Div. "A"

Judge R. Christopher Cox III, Div. "B"

Judge June Berry Darensburg, Div. "C"

Judge Scott U. Schlegel, Div. "D"

Judge Frank A. Brindisi, Div. "E"

Judge Michael P. Mentz, Div. "F"

Judge E. Adrian Adams, Div. "G"

Judge Donald "Chick" Foret, Div. "H"

Judge Nancy A. Miller, Div. "I"

Judge Stephen C. Grefer, Div. "J"

Chief Judge Ellen Shirer Kovach, Div. "K"

Judge Donald A. Rowan, Jr., Div. "L"

Judge Shayna Beevers Morvant, Div. "M"

Judge Stephen D. Enright, Jr., Div. "N"

Judge Cornelius E. Regan, *pro tempore*, Div. "O"

Judge Lee V. Faulkner, Jr., Div. "P"

EFILE: 12/29/2021 11:17 AM JEFF PAR 7014058 david $0.00 ::: 12170595 MORTGAGE BOOK 4966 PAGE 689



Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
4

12/29/2021 11:17:45 CERTIFIED TRUE COPY - Pg: 4 of 4 - D. Renton DEPUTY CLERK
01/10/2023 11:10:45 CERTIFIED TRUE COPY - Pg: 4 of 4 - Jefferson Parish Clerk of Court - ID:233749