**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ESPLANADE 2018 PARTNERS, LLC,

Plaintiff,

-against-

MT. HAWLEY INSURANCE COMPANY

Defendant.

1:23-cv-03592-DEH

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Greg K. Winslett, admitted *pro hac vice*
Texas State Bar No. 21781900
Michael D. Feiler, admitted *pro hac vice*
Texas State Bar No. 24055475
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-2111 (Fax)
gwinslett@qslwm.com
mfeiler@qslwm.com

Matthew Kraus (MK0621)
**CHARTWELL LAW**
One Battery Park Plaza, Suite 710
New York, NY 10004
mkraus@chartwelllaw.com

***ATTORNEYS FOR MT. HAWLEY INSURANCE COMPANY***

## TABLE OF CONTENTS


I. Preliminary Statement ........ 1

II. Background ........ 3

III. Argument And Authorities ........ 6

A. Legal Standard for Summary Judgment ........ 6

B. New York law, and only New York law, governs the choice-of-law analysis, including issues about the validity of the choice-of-law provision. ........ 6

C. Under the New York choice-of-law principles found in General Obligations Law § 5-1401, Plaintiff's claims are governed by New York law. ........ 9

D. Even if the insurance policy does not trigger General Obligations Law § 5-1401, Plaintiff's claims are still governed by New York law. ........ 13

E. The New York choice-of-law selection applies to Plaintiff's bad faith claims and claim for attorney's fees. ........ 15

F. Plaintiff is not entitled to attorney's fees under New York law ........ 20

G. Plaintiff is not entitled to replacement costs or increased costs of construction due to the enforcement of any law or ordinance ........ 21

IV. Conclusion ........ 23

# TABLE OF AUTHORITIES

## CASES

*2138747 Ontario, Inc. v. Samsung C & T Corp.*, 39 N.Y.S.3d 10 (1st Dep't 2018) ..................... 14

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) .......................................................... 18, 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................................. 6

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013)............................................................. 7

*Bradely v. Allstate Ins. Co*., 620 F.3d 509 (5th Cir. (La.) 2010) .................................................. 23

*Cambridge Nutrition A.G. v. Fotheringham*, 840 F. Supp. 299, (S.D.N.Y. 1994)....................... 12

*Capstone Logistics Holdings, Inc. v. Navarrete*,
No. 17-cv-4819 (G-BD), 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018).................................. 14

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
596 U.S. 107, 142 S. Ct. 1502, 1509, 212 L. Ed. 2d 451 (2022)................................................ 7

*CBKZZ Investment, LLC d/b/a Casa Rosa Hotel v. Renaissance Re Syndicate 1458 Lloyds and Mt. Hawley Insurance Company*,
No. 1:22-cv-10672-AS (S.D.N.Y Feb. 22, 2024) ....................................................................... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................................................... 6

*Ceres Environmental Services, Inc. v. Arch Specialty Ins. Co.*,
853 F.Supp.2d 859 (D. Minn. 2012) ........................................................................................ 18

*Chigirinskiy v. Panchenkova*,
No. 14 Civ. 4410, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015)............................................. 16

*Clear Spring Property and Casualty Co. v. Matador Sportfishing, LLC*,
593 F.Supp.3d 157, (M.D. Penn. 2022) .................................................................................... 17

*Clement v. Farmington Cas. Co.*,
No. 13-cv-1026 (NSR), 2015 WL 6971565 (S.D.N.Y. Nov. 10, 2015) .................................. 17

*Commerce & Indus. Ins. Co. v. U.S. Bank Natl Ass'n*,
No. 07–cv–5731 (JGK), 2008 WL 4178474 (S.D.N.Y. Sept. 3, 2008)....... 15, 16, 17, 18, 19, 20

*Consolidated Restaurant Operations, Inc. v. Westport Insurance Corporation*, ---
N.E.3d ----, 2024 WL 628047, 2024 N.Y. Slip Op. 00795 (N.Y. Feb. 15, 2024)............. 7, 8, 9

*Constitution Reins. Corp.* v. *Stonewall Ins. Co.*,
980 F. Supp. 124 (S.D.N.Y. 1997), aff'd without opinion, 182 F.3d 899 (2d Cir. 1999) ........ 6

*Core-Mark Int'l Corp. v. Commonwealth Ins. Co.*,
No. 05 Civ. 183, 2005 WL 1676704 (S.D.N.Y. July 19, 2005) ........ 18

*Cotiviti, Inc. v. McDonald*,
No. 19-cv-6559, 2021 WL 2784529 (S.D.N.Y. July 2, 2021) ........ 14

*D.R. Watson Holdings v. Caliber One Indem. Co.*,
15 A.D.3d 969, N.Y.S.2d 787 (2005) ........ 22

*Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*,
414 F.3d 325 (2d Cir. 2005) ........ 15

*Folksamerica Reinsurance Co. v. Republic Ins. Co.*,
No. 03 CIV. 6608 (VM), 2004 WL 1043086 (S.D.N.Y. May 6, 2004) ........ 6

*Frazer Exton Dev., LP v. Kemper Envtl., Ltd.*,
No. 03 Civ. 0637, 2004 WL 1752580 (S.D.N.Y. July 29, 2004) ........ 19

*H.S.W. Enters., Inc. v. Woo Lae Oak, Inc.*,
171 F. Supp. 2d 135, n.5 (S.D.N.Y. 2001) ........ 16

*Home Ins. Co. v. Serv. America Corp.*, 654 F. Supp 157, (N.D.Ill.1987) ........ 19

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, (2d Cir. 2001) ........ 20

*In re Payroll Express Corp.*, 921 F. Supp. 1121 (S.D.N.Y.1996) ........ 18, 19

*Indian Harbor Ins. Co. v. City of San Diego*,
972 F. Supp. 2d 634, (S.D.N.Y 2013), aff'd 586 Fed. Appx. 726 (2d Cir. 2014) ........ 11, 13

*IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*,
982 N.E.2d 609 (N.Y. 2012), cert. denied, 569 U.S. 994 (2013) ........ 10

*Jouve v. State Farm Fire and Cas. Co.*,
74 So.3d 220 (La. Ct. App. 2011) ........ 23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941) ........ 7

*Lafarge Corp. v. Nat'l Union Fire Ins. Co.*, 935 F.Supp. 675, (D.Md.1996) ........ 19

*Madison at Lakewood East Apts., LLC v. Landmark Am. Ins. Co.*,
No. 06-9859, 2009 WL 2391236 (E.D. La. Jul. 30, 2009) ........ 23

*Matter of New York Cent. Mut. Fire Ins. Co.*,
231 A.D.2d 829, 647 N.Y.S.2d 66 (1996) ........ 22

*Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552 (S.D.N.Y. 2018) ........ 14

*Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917 (N.Y. 2015) ........ 13, 14, 15

*Openwater Safety IV, LLC v. Concept Special Risks, Ltd.*,
2018 WL 11435659 (D. Colo. 2018) ........ 17

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
51 F.4th 456 (2d Cir. 2022) ........ 15, 16

*Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019) ........ 16

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
No. 13 Civ. 1654, 2014 WL 2610608 (S.D.N.Y. June 10, 2014) ........ 16

*Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*,
No. 08-CV-6256, 2010 WL 11549354 (W.D.N.Y. June 17, 2010) ........ 11

*Sirob Imports, Inc. v. Peerless Ins. Co.*, 958 F. Supp. 2d 384 (E.D.N.Y. 2013) ........ 22

*Stasack v. Capital Dist. Physicians' Health Plan*, 736 N.Y.S.2d 764 ........ 22

*Sukup v. New York*, 19 N.Y.2d 519 (1967) ........ 20

*Sun Forest Corp. v. Shvili,* 152 F. Supp. 2d 367 (S.D.N.Y. 2001) ........ 11

*Supply & Bldg. Co. v. Estee Lauder Intern., Inc.*,
No. 95 CIV. 8136 (RCC), 2000 WL 223838 (S.D.N.Y. Feb. 25, 2000) ........ 11

*Todd v. Wayne Co-op. Ins. Co.*, 31 A.D.3d 1026, (N.Y. 3d App. Div. 2006) ........ 22

*Tosapratt, LLC v. Sunset Properties, Inc.*,
86 A.D.3d 768, 926 N.Y.S.2d 760 (2011) ........ 11

*Turtur v. Rothschild Registry Int'l*, 26 F.3d 304 (2d Cir.1994) ........ 16

*United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020) ........ 14, 15

*Usach v. Tikhman*, No. 11 CIV. 1472 DLC,
2011 WL 6106542 (S.D.N.Y. Dec. 7, 2011) ........ 11

*Versai Mgmt. Corp. v. Clarendon America Ins. Co.*,
597 F.3d 729 (5th Cir. (La.) 2010) ........ 22, 23

*Wentworth Grp., Inc. v. Evanston Ins. Co.*,
2022 WL 909794 (S.D.N.Y. Mar. 29, 2022) ........ 20

*William B. Coleman Company, Inc v. Mt. Hawley Insurance Company*,
No. 22-cv-06133 (RA) (S.D.N.Y. Sept. 29, 2023)........................................................ 17

*Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68 (S.D.N.Y. 2021)................................................. 14

*Yankee Caithness Joint Venture, LP v. Planet Ins. Co.*,
1996 WL 426359 (S.D.N.Y. Jul. 30, 1996)................................................................................ 12

**<u>STATUTES</u>**

La. R.S. § 22:1896 ........................................................................................................ 20, 24

La. R.S. § 22:1964 ........................................................................................................ 20, 24

La. R.S. § 22:1973 ..................................................................................................... 20, 23, 24

La. R.S. § 22:1892 ..................................................................................................... 20, 23, 24

N.Y. Gen. Oblig. Law § 5–1401 ......................................................7, 9, 10, 11, 12, 13, 14, 15, 23

**<u>OTHER AUTHORITIES</u>**

La. Dept. Ins., Directive 195............................................................................................... 23

**<u>RULES</u>**

Fed. R. Civ. P. 56(a) ............................................................................................................. 6

Defendant Mt. Hawley Insurance Company ("Mt. Hawley") submits this Memorandum of Law in Support of its Motion for Partial Summary Judgment and urges the Court to honor the choice-of-law selection made by the parties in the insurance policy at issue herein, and rule that New York law applies to all claims asserted by Plaintiff in this dispute. Such a ruling will effectively eliminate the Louisiana-based "bad faith" causes of action Plaintiff has pled and entitle Mt. Hawley to summary judgment on those claims. In addition, because Plaintiff has not actually performed repairs, Mt. Hawley seeks summary judgment on the basis that Plaintiff cannot recover replacement costs or code compliance costs under the Mt. Hawley insurance policy at issue. In support thereof, Mt. Hawley respectfully shows as follows:

## I. PRELIMINARY STATEMENT

This is an insurance coverage dispute where Plaintiff asserts multiple claims and seeks millions of dollars in damages in relation to a property insurance policy issued by Mt. Hawley (the "Policy"). The Legal Action Conditions Endorsement in the Policy requires that "[a]ll matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)."

As a preliminary matter, it is important to recognize that the choice-of-law analysis, including issues concerning the validity of the Policy's choice-of-law provision itself, is governed by New York law, the law of the forum state. Conversely, any Louisiana common law or statutory pronouncements regarding choice-of-law provisions are completely irrelevant in this context. The choice-of-law selection, unambiguously set forth in the Mt. Hawley Policy, clearly and unmistakably reflects the parties' agreement that New York law will apply to any and all claims and disputes arising out of the Policy. Moreover, N.Y. General Obligations Law §5-1401 compels that result. That statute specifically permits parties to a contract involving aggregate obligations

exceeding $250,000—like the Policy at issue here—to include a New York choice-of-law provision even if they have no relationship to New York. The New York Court of Appeals, in interpreting that statute, has expressly ruled that it reflects the Legislature's intent to promote and preserve New York's standing as a commercial and financial center, and to give certainty as to how contracts will be interpreted, thus mandating the enforcement of New York choice-of-law provisions. Accordingly, the chosen governing law must be enforced in this case, such that the substantive law of New York—not Louisiana—applies to this dispute.

The Court's choice-of-law determination is necessary herein because Plaintiff's Complaint asserts claims for "bad faith" violations of various Louisiana statutes and seeks recovery thereunder for extra-contractual damages and attorneys' fees that are simply not cognizable under New York law. New York courts have universally held that insurers like Mt. Hawley have no distinct liability in tort or contract for any purported bad faith claims handling. Further, Plaintiff's claims under these Louisiana statutes are particularly nonjusticiable as New York does not have an equivalent statutory framework that entitles Plaintiff to damages, attorneys' fees, or additional financial recovery arising from Mt. Hawley's claim handling.

To the extent Plaintiff's pleadings can be construed to assert a claim for attorney's fees under New York law, there is no evidence whatsoever that Mt. Hawley's claim decision was "a gross disregard for its policy obligations," or that "no reasonable insurer" would have made the same decision, as it was based upon the reports and opinions of the independent adjusters, engineers, and other consultants Mt. Hawley hired to assist in the claim investigation.

Finally, it is undisputed that Plaintiff has never repaired or replaced any of the roofs, windows, or window seals that Plaintiff contends were damaged by the hurricane. Against that

background, the Mt. Hawley insurance policy contractually precludes any recovery for replacement costs or costs purportedly necessary to comply with applicable building codes.

## II. BACKGROUND

On or about September 7, 2021, Plaintiff notified Mt. Hawley of a claim for damage to Plaintiff's office building in Metairie, Louisiana (the "Property"), as an alleged result of Hurricane Ida. Mt. Hawley's Material Facts at ¶ 1. Plaintiff's claim was brought under Mt. Hawley Commercial Property Policy No. MCP0165705, issued to Plaintiff for the period from April 11, 2021 to April 11, 2022, covering the Property (the "Policy"). Mt. Hawley's Material Facts at ¶ 2.

Mt. Hawley investigated the damage to Plaintiff's Property resulting from this hurricane, including retaining independent adjusters, engineers, and other highly-qualified building consultants to inspect all of the claimed damage and provide Mt. Hawley with their reports and opinions regarding the cause and scope of damage to the Property. Relying on these reports and opinions, Mt. Hawley ultimately determined that any damage covered under the Policy did not exceed the applicable Policy deductible. Mt. Hawley's Material Facts at ¶ 3.

Dissatisfied with this result, Plaintiff commenced this action against Mt. Hawley by filing a Petition for Damages in Louisiana state court on November 2, 2022. [Doc. 1-3] The Petition alleges that Mt. Hawley wrongfully denied the claim. [Doc. 1-3 at ¶ 70-72] Moreover, the Petition seeks statutory and consequential damages and penalties in addition to reasonable attorney's fees based on Mt. Hawley's purported violations of Louisiana "bad faith" statutes, La. R.S. §§ 22:1892, 22:1896, 22:1964, and 22:1973. [Doc. 1-3 at ¶¶ 55-69]

Mt. Hawley timely removed this case to the United States District Court for the Eastern District of Louisiana, and moved to transfer venue to the Southern District of New York based upon the mandatory New York forum selection and choice-of-law provision in the Policy. The Eastern District of Louisiana subsequently transferred this action to this Court by order dated April

28, 2023. [Doc. 23] The Eastern District's order recognized that the Policy's Legal Action Conditions Endorsement was valid and enforceable, and that it affirmatively required that any litigation between the parties be brought in New York.

There is no dispute concerning the contents of the Policy, which specifically provides, in pertinent part, as follows:

**LEGAL ACTION CONDITIONS ENDORSEMENT**

> This endorsement adds the following to LEGAL ACTION AGAINST US elsewhere in the Policy:
>
> **All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).**
>
> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, any Named Insured, any additional insured, and any beneficiary hereunder shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any Named Insured, any additional insured, or any beneficiary hereunder against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

Mt. Hawley's Material Facts at ¶ 4 (emphasis added).

In its Petition for Damages, Plaintiff seeks to recover benefits under the Policy by asserting claims for breach of contract, and also asserts various "bad faith" claims under Louisiana law, denominated as claims under La. R.S. §§ 22:1892, 22:1896, 22:1964, and 22:1973 (collectively the "bad faith claims"). [Doc. 1-3 at ¶¶ 55-69] All of the bad faith claims are based on the same facts alleged in support of the breach of contract claim and are purportedly supported by allegations that Mt. Hawley wrongfully failed to adequately compensate Plaintiff and failed to timely, fully, and fairly adjust the claim. *Id.* Plaintiff seeks to recover compensatory damages for breach of contract, "bad faith" penalties and undefined consequential damages pursuant to the Louisiana statutes, and reasonable attorney's fees. [Doc. 1-3 at ¶ 73]

Although Plaintiff claims that Hurricane Ida damaged the roofs and windows of the Property, such that all of the roofs require replacement, and that 155 windows allegedly need to be replaced, along with the seals of the remaining windows, Plaintiff admits that, more than two-and-a-half years after the storm, they have not done any of this work. Mt. Hawley's Material Facts at ¶ 5.

The Policy contains the following provisions that limit Plaintiff's recovery of replacement costs and the increased costs of construction due to the enforcement of any law or ordinance governing the construction, use, or repair of the Property:

> **G. Optional Coverages**
>
> If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.
>
> . . . .
>
> **3. Replacement Cost**
>
> . . . .
>
> **d.** We will not pay on a replacement cost basis for any loss or damage:
>
> **(1)** Until the lost or damaged property is actually repaired or replaced; and
>
> **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
>
> . . . .
>
> **ORDINANCE OR LAW COVERAGE – COMBINED LIMIT**
>
> . . . .
>
> **F. Loss Payment**
>
> . . . .
>
> **3.** With respect to the **Increased Cost Of Construction**:

> **a.** We will not pay for the increased cost of construction:
>
> **(1)** Until the property is actually repaired or replaced, at the same or another premises; and
>
> **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Mt. Hawley's Material Facts at ¶ 6. No extension was ever sought or granted.

## III. ARGUMENT AND AUTHORITIES

### A. Legal Standard for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is required when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FRCP 56 (a). To avoid summary judgment, the non-moving party may not simply rest upon conclusory allegations or denials; rather, it bears the burden of providing evidence of each essential element of its claim to show that a reasonable jury could find in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Disputes regarding a fact issue that is irrelevant or unnecessary are insufficient, as is a mere scintilla of evidence that is colorable or not significantly probative. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Summary judgment is particularly appropriate in resolving insurance coverage disputes, because the interpretation of an insurance policy presents a question of law." *Folksamerica Reinsurance Co. v. Republic Ins. Co.*, No. 03 CIV. 6608 (VM), 2004 WL 1043086, at *2 (S.D.N.Y. May 6, 2004) (quoting *Constitution Reins. Corp.* v. *Stonewall Ins. Co.*, 980 F. Supp. 124, 127 (S.D.N.Y. 1997), aff'd without opinion, 182 F.3d 899 (2d Cir. 1999)) (citation omitted).

### B. New York law, and only New York law, governs the choice-of-law analysis, including issues about the validity of the choice-of-law provision.

New York courts routinely enforce contractual choice of law agreements. Mt. Hawley anticipates that, despite its express agreement that New York law would govern all issues

pertaining to the Policy, Plaintiff will attempt to avoid that contractual reality by relying on Louisiana statutes and Louisiana choice of law rules. Of course, long-established case law makes it abundantly clear that Louisiana-based choice of law arguments have no application whatsoever to the choice-of-law analysis that the Court must conduct in this matter.

"According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115, 142 S. Ct. 1502, 1509, 212 L. Ed. 2d 451 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941)). In a situation like this, where the case has been transferred due to the enforcement of a forum selection clause, the choice of law principles of the state where the suit is transferred control. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64–66, 134 S. Ct. 568, 582–83, 187 L. Ed. 2d 487 (2013) ("[W]hen a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules.").

The New York Court of Appeals has recently enforced a choice of venue and choice of law provision in a commercial property policy issued by Westport Insurance Corporation similar to the "LEGAL ACTION CONDITIONS ENDORSEMENT" provision in the Mt. Hawley policy at issue here. *Consolidated Restaurant Operations, Inc. v. Westport Insurance Corporation*, --- N.E.3d ----, 2024 WL 628047, 2024 N.Y. Slip Op. 00795 (N.Y. Feb. 15, 2024). In *Consolidated*, the Westport policy at issue provided a choice of law provision stating in part: "1. The laws of the State of New York, without regard to its conflict of laws rules, that would cause the application of the laws of any other jurisdiction, shall govern the construction and interpretation of this

POLICY."[1] Consolidated operated restaurants in twelve states and internationally, including the State of Louisiana as the Westport policy contained an endorsement charging a surcharge of $188.36 for "Citizens Property FAIR Plan Emergency Assessment" and operations in Louisiana.[2] The court in *Consolidated* first found that the Westport "policy is governed by New York law under its express terms." *Id.* at * 1. The *Consolidated* court then joined other states in declaring that commercial property policies do not provide coverage for COVID-19 business interruption losses. See *Id*. at * 6.

Accordingly, here, in considering whether the contractual choice-of-law clause in the Mt. Hawley policy is enforceable, New York law, not Louisiana law, governs and applies to interpret the Mt. Hawley Policy. *See id.* at * 1. New York law, and only New York law, applies to the choice-of-law analysis, including the validity of the choice-of-law provision. Louisiana statutes or Louisiana common law pronouncements addressing choice-of-law issues have no relevance whatsoever to this determination. Because the New York choice-of-law regime does not include any statute or other prohibition that would even arguably void a contractual choice-of-law provision, the New York choice-of-law provision agreed upon by the parties must be enforced, as discussed further below.

In addition to the New York Court of Appeals decision in *Consolidated*, Judge Subramanian of the Southern District of New York just recently issued an order enforcing the identical Mt. Hawley New York choice of law clause at issue here. *See CBKZZ Investment, LLC d/b/a Casa Rosa Hotel v. Renaissance Re Syndicate 1458 Lloyds and Mt. Hawley Insurance*

---

[1] *See* Westport Insurance Corporation Policy No. NAP 2002671 01, Section IX General Conditions, F. Governing Law and Jurisdiction (p. 64 of 90), attached as "Exhibit A" to Plaintiff Consolidated Restaurant Operations, Inc. Complaint at paragraph 5 (**Exhibit D**).
[2] *See id.* at p. 3 of 90.

*Company*, No. 1:22-cv-10672-AS (S.D.N.Y Feb. 22, 2024), at 2 (**Exhibit E**). In *CBKZZ*, Judge Subramanian specifically held that the exact same Mt. Hawley New York choice of law provision was enforceable and applied New York law against a Texas insured, despite the fact that the Texas Insurance Code contains a statutory regulation providing that insurance policies issued to Texas insureds "shall be" governed by Texas law. Against that background, and over the insured's objection, Judge Subramanian applied New York law in that case, expressly holding that, under New York's choice-of-law rules, "the Court may not conduct the type of choice-of-law analysis that CBKZZ is proposing when the parties have selected New York law in their contract."

### C. Under the New York choice-of-law principles found in General Obligations Law § 5-1401, Plaintiff's claims are governed by New York law.

Section 5-1401 of New York's General Obligations Law provides that where, as here, a transaction involves at least $250,000,[3] "[t]he parties to any contract ... may agree that the law of [New York] shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." The complete text of the statute is as follows:

> § 5-1401. Choice of law
>
> 1. The parties to any contract, agreement or undertaking, contingent or otherwise**,** in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection (a) of section 1-301 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection (c) of section 1-301 of the uniform commercial code.

---

[3] As discussed below, the $250,000 threshold is met whether one considers the amount Plaintiff claims Mt. Hawley owes under the Policy or the aggregate Policy limits. Plaintiff contends it is entitled to recover based on an estimate of over $5 million for alleged damage, and the Policy has a per occurrence loss limit of $35,725,000.00. [**Exhibit A-1** at p. 86 of 96].

> 2. Nothing contained in this section shall be construed to limit or deny the enforcement of any provision respecting choice of law in any other contract, agreement or undertaking.

N.Y. Gen. Oblig. Law § 5–1401.

Section 5-1401 was enacted because the New York Legislature "feared" that, despite the parties' express agreement to be governed by New York law, a court might "conduct a conflicts analysis" that might point to some other jurisdiction as having the "most significant relationship" and thus apply some other state law. *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 611 (N.Y. 2012), cert. denied, 569 U.S. 994 (2013). "[T]he Legislature was concerned about how that would affect the standing of New York as a commercial and financial center," and enacted the statute "to promote and preserve" that standing. *Id.* at 611-12. "The goal of General Obligations Law § 5–1401 was to promote and preserve New York's status as a commercial center and to maintain predictability for the parties." *Id.* at 612. The Court reasoned that to find "that courts must engage in a conflict-of-laws analysis despite the parties' plainly expressed desire to apply New York law would frustrate the Legislature's purpose of encouraging a predictable contractual choice of New York commercial law and, crucially, of eliminating uncertainty regarding the governing law." *Id.* at 612. The approach Mt. Hawley anticipates will be advanced by Plaintiff herein to avoid this very clear New York choice-of-law provision represents the exact scenario both the New York legislature and courts have sought to prevent.

For a contract governed by section 5-1401, the parties' choice-of-law selection will be enforced, "even if, under a traditional choice of law analysis, the application of the chosen law would violate a fundamental public policy of another, more interested jurisdiction." *Tosapratt, LLC v. Sunset Properties, Inc.*, 86 A.D.3d 768, 770, 926 N.Y.S.2d 760, 763 (2011); *see also Usach v. Tikhman*, No. 11 CIV. 1472 DLC, 2011 WL 6106542, at *6 (S.D.N.Y. Dec. 7, 2011). "Section 5–1401 does not provide for any exceptions that would permit a court to decline to enforce a

choice-of-law clause if the clause would infringe a fundamental public policy interest of the conflicting jurisdiction." *Sun Forest Corp. v. Shvili,* 152 F. Supp. 2d 367, 388 (S.D.N.Y. 2001). While section 5-1401 enumerates some specific "carve outs," such as personal service, labor, and securities contracts, there is no reference in the statute to any type of public policy exception. *Supply & Bldg. Co. v. Estee Lauder Intern., Inc.*, No. 95 CIV. 8136 (RCC), 2000 WL 223838, at *2 (S.D.N.Y. Feb. 25, 2000). "Where it is applicable, General Obligations Law § 5-1401 requires the enforcement of the parties' choice-of-law agreement, regardless of whether the agreement has a reasonable relation to the State of New York, and regardless of any public policy considerations." *Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*, No. 08-CV-6256, 2010 WL 11549354, at *8 (W.D.N.Y. June 17, 2010) (emphasis added). Section 5-1401 has been applied to enforce New York choice of law provisions in an insurance dispute like this action. *Indian Harbor Ins. Co.*, 972 F. Supp. 2d at 651–52 (enforcing New York choice-of-law clause in insurance policy context).

To the extent Plaintiff herein erroneously contends that section 5-1401 does not apply because the premium paid for the policy was less than $250,000, that contention totally ignores the actual language of section 5-1401. Section 5-1401 applies where "the parties to any contract, agreement or undertaking, contingent or otherwise**,** in consideration of, **or** relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars" agree to a New York choice-of-law provision. The "consideration" for the agreement (i.e., the premium for the policy) is clearly not the only factor to consider in determining whether section 5-1401 is triggered. While section 5-1401 does clearly apply where the consideration for a contract is greater than $250,000, it likewise also applies where the obligations arising out of the transaction are in aggregate more than $250,000. It cannot be disputed that Mt.

Hawley's obligation under the Policy was to provide Plaintiff up to $35,725,000 in commercial property insurance coverage.

This Court has specifically applied section 5-1401 to give effect to both the consideration and the aggregate obligations language of section 5-1401. *See Cambridge Nutrition A.G. v. Fotheringham*, 840 F. Supp. 299, 302 (S.D.N.Y. 1994). In *Cambridge Nutrition*, the parties entered into an agreement for the shareholders to sell the company's shares for $1.24 million, and the agreement included covenants that the shareholders would not compete, for which $10,000 was paid as consideration. *Id.* at 300. The purchaser filed suit for breach of the covenant not to compete, and argued that the choice-of-law provision in the contract was enforceable under section 5-1401. *Id.* The competing shareholder argued that the $250,000 threshold was not met because the value of the non-compete was only $10,000. *Id.* at 302. This Court expressly rejected that narrow position, noting that "the plain statutory language 'arising out of a transaction covering in the aggregate' defeat[ed] [the competing shareholder's] interpretation." *Id.*

Mt. Hawley is aware of one case, *Yankee Caithness Joint Venture, LP v. Planet Ins. Co.*, 1996 WL 426359 (S.D.N.Y. Jul. 30, 1996), in which the magistrate judge simply looked to the consideration paid for the policy (i.e., the premium) in determining that § 5-1401 did not apply. In so doing, the *Yankee Caithness* court ignored § 5-1401's clear application to contracts, like the Mt. Hawley policy, where the aggregate contractual obligation exceeds $250,000. Because it seems clear from the opinion that neither party even raised this issue, the precedential value of this case is certainly questionable at best.

Clearly, in order to give all of the language of section 5-1401 effect, the $250,000 threshold is met if the aggregate coverage limit available under the policy exceeds $250,000, even if the premium paid for the policy is less than that amount. In other words, while the consideration for

an insurance policy may be the premium, the "obligation arising out of the transaction" is the total policy limit contractually payable for covered claims. *See Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 651 (S.D.N.Y 2013), aff'd 586 Fed. Appx. 726 (2d Cir. 2014) ("Indian Harbor's aggregate potential liability under the policy is $50 million, and, as a pure statutory matter, the parties do not dispute the applicability of Section 5-1401 to the policy."). In this case, the aggregate limit of the Mt. Hawley policy is $35,725,000, well in excess of the $250,000 threshold, and Plaintiff herein seeks recovery of over $4,000,000. Accordingly, section 5-1401 applies and mandates that the contractual choice-of-law provision must be enforced such that Plaintiff's claims are governed by New York law.

**D. Even if the insurance policy does not trigger General Obligations Law § 5-1401, Plaintiff's claims are still governed by New York law.**

In the extremely unlikely event that the Court concludes that General Obligations Law § 5-1401 does not apply, the New York Court of Appeals has held that, even in the absence of that statute, a contractual choice-of-law selection must still be honored without traditional choice-of-law analysis. *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 922-23 (N.Y. 2015). "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract is one that does not fall within General Obligations Law § 5–1401." *Id.* at 922 (emphasis added). As explained by the New York Court of Appeals, "logic dictates that, by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply"—and the law of "no other state." 45 N.E.3d at 923-24. To hold otherwise "would contravene the primary purpose of including a choice-of-law provision in a contract—namely, to avoid a conflict-of-law analysis and its associated time and expense. Such an interpretation would also interfere with, and ignore the parties' intent contrary to the basic tenets of contract interpretation." *Id.* at 923.

This Court has observed that "[t]he language of *Ministers* is unequivocal and brooks no exceptions: 'a New York choice-of-law clause in a contract… demonstrates the parties' intent that courts do not conduct a conflict of laws analysis' and 'obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives….'" *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583 (S.D.N.Y. 2018) (quoting *Ministers*, 26 N.Y. 3d at 468); *see also Cotiviti, Inc. v. McDonald*, No. 19-cv-6559, 2021 WL 2784529, at *4 (S.D.N.Y. July 2, 2021) ("The court in *Ministers* also stated that New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract") (internal quotation marks omitted); *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 39 N.Y.S.3d 10, 15 (1st Dep't 2018) ("New York courts are also prohibited from engaging in a conflict-of-law analysis where the parties include a choice-of-law provision in their contract, even if the contract does not fall within General Obligations Law § 5–1401"); *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-cv-4819 (G-BD), 2018 WL 6786338, at *21 (S.D.N.Y. Oct. 25, 2018) ("Courts since *Ministers* have held, in light of that case, that New York courts no longer engage in any conflicts analysis where the parties have agreed to a valid choice of law provision").[4]

[4] Despite the directive from the New York Court of Appeals in *Ministers* that there should be no choice-of-law analysis where there is a contractual choice-of-law provision, the Second Circuit did in one case engage in such a discussion. *United States v. Moseley*, 980 F.3d 9 (2d Cir. 2020). Of course, as specifically noted by this Court, *Moseley* is "difficult to square with *Ministers & Missionaries* given the New York Court of Appeals' emphasis on 'the parties' intent' and its unequivocal directive that 'New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract. Indeed, it is hard to avoid the conclusion that the *Moseley* Court simply overlooked *Ministers & Missionaries* and applied the wrong analysis under New York law." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 94 (S.D.N.Y. 2021). Perhaps recognizing this problem with *Moseley*, the Second Circuit more recently certified questions to the New York Court of Appeals seeking clarification in light of *Ministers* about whether and to what extent choice-of-law analysis can be undertaken in the face of a contractual choice-of-law provision. *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 473 (2d Cir. 2022), certified question accepted sub nom. *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 39 N.Y.3d 960, 199 N.E.3d 897 (2022). On February 20, 2024, the New York

Of course, as explained above, it is clear that General Obligations Law § 5-1401 ends any choice-of-law inquiry and dictates that the parties' choice-of-law election must be honored. But, even if section 5-1401 does not apply, under *Ministers*, the result is the same and the parties' choice-of-law election must be honored, without any choice-of-law analysis.

**E. The New York choice-of-law selection applies to Plaintiff's bad faith claims and claim for attorney's fees.**

Having established that the New York choice-of-law clause is enforceable under New York law, the next step in the analysis is to determine the scope of the choice-of-law clause, and specifically, whether the clause encompasses Plaintiff's bad faith claims. "In determining the scope of the choice of law provision, this Court must follow New York law." *Commerce & Indus. Ins. Co. v. U.S. Bank Natl Ass'n*, No. 07–cv–5731 (JGK), 2008 WL 4178474, at *4 (S.D.N.Y. Sept. 3, 2008) (citing *Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 333 (2d Cir. 2005) ("The district court ... sitting in diversity, was bound to apply New York law to determine the scope of the contractual choice-of-law clause. New York courts decide the scope of such clauses under New York law, not under the law selected by the clause, which here also happens to be New York law.")). If the choice-of-law clause encompasses the bad faith claims, thus requiring application of New York law, those claims are not cognizable and summary judgment is appropriate. *Id.*, at *3.

The choice-of-law clause in the Policy plainly covers all matters arising under the Policy, including performance and enforcement, and is, therefore, sufficiently broad to encompass

Court of Appeals issued its order in *Petróleos*, finding that the validity of the bonds at issue was governed by Venezuela law because the bonds fell under a carve-out in 5-1401 for transactions governed by the UCC. *See Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 6, 2024 WL 674251, at *5 (Ct. App. N.Y. Feb. 20, 2024). However, the Court held that it was otherwise reaffirming "the principle of *IRB-Brasil* and *Ministers* that when the parties have chosen New York Law, a court may not contravene that choice through a common-law conflicts analysis." *Id.* at *6.

Plaintiff's bad faith claims. Under New York law, a choice-of-law clause that extends to include all matters arising out of the contract, like the clause at issue here, mandates that New York law apply not only to causes of action sounding in contract, but also to any non-contractual claims. *See Turtur v. Rothschild Registry Int'l*, 26 F.3d 304, 309–310 (2d Cir.1994); *Ramiro Aviles v. S&P Glob., Inc*., 380 F. Supp. 3d 221, 271 (S.D.N.Y. 2019); *H.S.W. Enters., Inc. v. Woo Lae Oak, Inc*., 171 F. Supp. 2d 135, 141 n.5 (S.D.N.Y. 2001). "[P]rovisions applying to disputes 'arising out of' or 'relating to' a contract are capacious enough to reach related tort claims, while provisions stating that a contract will be 'governed by' or 'construed in accordance with' the law of a state are not." *Ramiro*, 380 F. Supp. 3d at 271 (citing *Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410, 2015 WL 1454646, at *6 (S.D.N.Y. Mar. 31, 2015) (quoting *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P*., No. 13 Civ. 1654, 2014 WL 2610608, at *40 (S.D.N.Y. June 10, 2014)).

In addition, even if the choice-of-law clause at issue here applied only to contractual claims (which is clearly not the case), the clause would still govern the bad faith claims and dismissal would still be required under New York law for the reasons explained by this Court in *Commerce*. Again, the breadth of the Mt. Hawley choice-of-law clause belies any interpretation that it is limited to contractual claims, specifically extending its scope to cover "**all matters arising**" under the policy including "**performance and enforcement**" (not just interpretation). In *Commerce*, this Court dismissed bad faith claims based on a New York choice-of-law clause contained in first-party insurance policies, unequivocally holding that even a more narrowly worded choice-of-law clause encompasses insurance bad faith claims, that such claims are not cognizable under New York law, and that such claims, therefore, must be dismissed. 2008 WL 4178474, at *6; *see also*

*Clement v. Farmington Cas. Co*., No. 13-cv-1026 (NSR), 2015 WL 6971565, at *6 (S.D.N.Y. Nov. 10, 2015).[5]

*Commerce* was a declaratory judgment action filed by insurance companies in which the defendant insured filed counterclaims for breach of contract and bad faith refusal to pay claims, 2008 WL 4178474. The insurers filed motions to dismiss the bad faith claims, and the resolution of those motions required a determination of which state's law governed the bad faith claims. If, as the insurers argued, New York law governed the claims for bad faith refusal to pay, then dismissal of the claim was required because New York law views various bad faith claims against insurance carriers as "contractual in nature." *Id*. at * 3. The *Commerce* court held such a claim is duplicative of the breach of contract claim and should be dismissed under New York law. *Id*.

It is important to note that the New York choice-of-law clause at issue in *Commerce* did not even include the broad language at issue here. Instead, the choice-of-law clause in *Commerce* applied only to the validity, formation and interpretation or the policy.[6] Nevertheless, for the

---

[5] A court in this district recently reached the same conclusion in a case involving Mt. Hawley. *See William B. Coleman Company, Inc v. Mt. Hawley Insurance Company,* No. 22-cv-06133 (RA) (S.D.N.Y. Sept. 29, 2023) (order finding New York law applies to all claims, remedies, and causes of action asserted including, without limitation, claims for bad faith, consequential, statutory, and extra-contractual damages, statutory penalties, and attorney's fees).

[6] Again, the more limited language of the clause in *Commerce* stands in sharp contrast to the language of the Mt. Hawley choice-of-law clause, specifically extending its scope to cover "**all matter arising**" under the policy including "**performance and enforcement**" (not just interpretation). The broad scope of language like that used in the Mt. Hawley clause is recognized in jurisdictions throughout the country. *See e.g. Clear Spring Property and Casualty Co. v. Matador Sportfishing, LLC*, 593 F.Supp.3d 157, 162-64 (M.D. Penn. 2022) (applying "any dispute arising hereunder" language to extend New York choice-of-law clause both to contractual claim and to bar Pennsylvania statutory bad faith claims) (collecting additional authority); *Openwater Safety IV, LLC v. Concept Special Risks, Ltd.*, 2018 WL 11435659 (D. Colo. 2018) (applying "any dispute arising from" language to extend New York choice-of-law clause both to contract claim and to bar Colorado state bad faith claims, where "all of plaintiff's claims … arise from the parties' performance under the insurance contract and subsequent coverage dispute"); *Ceres Environmental Services, Inc. v. Arch Specialty Ins. Co.*, 853 F.Supp.2d 859, 865-66 (D. Minn.

reasons set forth above, the *Commerce* court still held that the New York choice-of-law provision governed the bad faith claim and dismissed the claim as required by New York law. *Id*., at * 5.

As this Court further explained in *Commerce*, a bad faith claim is treated as a breach of the underlying contract for purposes of applying a choice of law provision, and therefore, "New York ... law support[s] the conclusion that the bad faith and punitive damages claims must be considered together with the breach of contract claim for choice-of-law purposes." *Id*., at * 4 (citing *In re Payroll Express Corp*., 921 F. Supp. 1121, 1125 (S.D.N.Y.1996)); *Core-Mark Int'l Corp. v. Commonwealth Ins. Co*., No. 05 Civ. 183, 2005 WL 1676704, at *3-*4 (S.D.N.Y. July 19, 2005) (holding that plaintiff's bad faith claim should be dismissed because New York law applies to the plaintiff's bad faith claim in light of a choice-of-law provision and that "New York does not recognize the tort of bad faith denial of insurance coverage.").

This Court went on to explain that the application of New York law in this context was also supported by the Supreme Court's decision in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985). In that case, the Supreme Court held that a claim for bad faith handling of an insurance claim under Wisconsin law was "inextricably intertwined" with matters of contract interpretation, and therefore, any attempt to assess liability for bad faith would inevitably involve contract interpretation because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith. 471 U.S. at 218. Based on this reasoning, this Court held that the bad faith claim in *Commerce* "was 'inextricably intertwined' with the contract claim, and therefore the same law should govern both the contractual claim as well as the bad faith claims."

---

2012) (applying "any dispute over the meaning, interpretation or operation of any term …" language in New York choice-of-law clause both to contract claims and to bar Alabama and Minnesota bad faith/fraud claims, because they "raise issues regarding Arch's obligations and performance under the Policy….").

2008 WL 4178474 at, *4. The *Commerce* court went on to note that "[a]n unnecessarily confusing situation would result if the law of one state is used to interpret the insurance agreement regarding the breach of contract claim and the law of a second state is applied to interpret the same agreement with regard to the bad faith claim." *Id*., at *4 (citing *Home Ins. Co. v. Serv. America Corp*., 654 F. Supp 157, 158-59 (N.D.Ill.1987); *In re Payroll Express Corp*., No. 92-B-43150, 2005 WL 2438444, at *14 (Bankr.S.D.N.Y. March 30, 2005); *Lafarge Corp. v. Nat'l Union Fire Ins. Co.*, 935 F.Supp. 675, 692 (D.Md.1996)).

In the final analysis, this Court concluded in *Commerce* that the basic holding of the above-cited cases applies with equal force where the choice-of-law for a contract dispute is determined by a contractual choice-of-law provision. *Id*. at *5. Accordingly, this Court held that "in a first-party breach of insurance contract claim, where the allegation of bad faith refusal to pay depends on a determination of the plaintiff's obligations under the insurance contract, the breach of contract and bad faith claims are inextricably intertwined and should be governed by the laws of the same state [and therefore], New York law should also apply to the bad faith refusal to pay claim relating to these contracts." *Id*. Because New York law would not recognize a bad faith claim distinct from the breach of contract claim, the Court dismissed the bad faith claim. *Id*.[7]

The same result is required here. Clearly, the choice-of-law clause at issue in this case is broadly worded to encompass so-called "non-contractual claims," specifically extending its scope to cover "**all matters arising**" under the policy including "**performance and enforcement**" (not just interpretation). Accordingly, New York law governs Plaintiff's bad faith claims. This fact alone

---

[7] Based on this reasoning, this Court distinguished a contrary result in *Frazer Exton Dev., LP v. Kemper Envtl., Ltd.*, No. 03 Civ. 0637, 2004 WL 1752580, at *10 (S.D.N.Y. July 29, 2004), noting that the court in *Frazer* did not consider that, in deciding choice-of-law, the court must apply New York law that does not consider a bad faith claim as separate from a breach of contract claim, nor did that court consider the Supreme Court's decision in *Allis-Chalmers*.

is dispositive. In addition, as in *Commerce*, Plaintiff's bad faith claims are contractual in nature and inextricably intertwined with the contract claim. Plaintiff's decision to file bad faith claims under Louisiana statutes rather than under some common law theory like breach of the duty of good faith and fair dealing does not change the analysis. Clearly, the parties agreed that New York law would govern all matters arising under the Policy, and that language is broad enough to include all contractual and non-contractual claims, as a matter of law. Thus, for all the reasons set forth above, Louisiana law simply does not apply to this dispute, and all of Plaintiff's claims are governed by New York law. Accordingly, Plaintiff's claims under La. R.S. § 22:1892, § 22:1973, § 22:1896, and § 22:1964, and Plaintiff's claim for attorney's fees under Louisiana law, should be dismissed.

**F. Plaintiff is not entitled to attorney's fees under New York law**

As set forth above, Plaintiff's claim for attorney's fees under Louisiana law should be dismissed because New York law applies to this dispute. Of course, even under New York law, an insured cannot recover attorney's fees against its insurer except in extremely narrow circumstances involving the insurer's "gross disregard" for its obligations under the policy. *See Wentworth Grp., Inc. v. Evanston Ins. Co.*, 2022 WL 909794, at *3 (S.D.N.Y. Mar. 29, 2022); *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624.625 (2d Cir. 2001) (emphasis added), citing *Sukup v. New York*, 19 N.Y.2d 519, 522 (1967).

Plaintiff has no evidence whatsoever to even arguably meet the heavy burden set forth above. It is undisputed that Mt. Hawley's claim determination was based upon the reports and opinions of the independent adjusters, engineers, and building consultants Mt. Hawley retained to inspect the Property and assist in the investigation of Plaintiff's Claim [Mt. Hawley's Statement of Material Facts, ¶ 3], and there is no evidence whatsoever that Mt. Hawley exhibited "a gross disregard" for its obligations to Plaintiff.

**G. Plaintiff is not entitled to replacement costs or increased costs of construction due to the enforcement of any law or ordinance**

As noted above, the Mt. Hawley Policy requires that Plaintiff actually repair or replace damaged property in order to be entitled to recover replacement costs and ordinance or law costs, as follows:

> **G. Optional Coverages**
>
> If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.
>
> . . . .
>
> **3. Replacement Cost**
>
> . . . .
>
> **d.** We will not pay on a replacement cost basis for any loss or damage:
>
> **(1)** Until the lost or damaged property is actually repaired or replaced; and
>
> **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
>
> . . . .
>
> **ORDINANCE OR LAW COVERAGE – COMBINED LIMIT**
>
> . . . .
>
> **F. Loss Payment**
>
> . . . .
>
> **3.** With respect to the **Increased Cost Of Construction**:
>
> **a.** We will not pay for the increased cost of construction:
>
> **(1)** Until the property is actually repaired or replaced, at the same or another premises; and
>
> **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Mt. Hawley is entitled to summary judgment as to Plaintiff's claims herein for replacement costs and code compliance costs because, under either New York or Louisiana law (which does not apply here), an insured is not entitled to these costs unless the insured actually incurs them in making repairs or replacement of the lost or damaged property at issue. *See Sirob Imports, Inc. v. Peerless Ins. Co*., 958 F. Supp. 2d 384, 389 (E.D.N.Y. 2013) ("[T]he Court finds that the Plaintiff was required to complete repairs or reconstruction within two years of the date of the incident before the Defendant must provide replacement cost coverage."); *Todd v. Wayne Co-op. Ins. Co*., 31 A.D.3d 1026, 1027 (N.Y. 3d App. Div. 2006) ("Under the terms [of the policy], replacement cost value cannot be awarded without plaintiff first actually repairing or replacing the property.", citing *D.R. Watson Holdings v. Caliber One Indem. Co*., 15 A.D.3d 969,696, 789 N.Y.S.2d 787 (2005), *Stasack v. Capital Dist. Physicians' Health Plan*, 736 N.Y.S.2d 764, and *Matter of New York Cent. Mut. Fire Ins. Co*., 231 A.D.2d 829, 830, 647 N.Y.S.2d 66 (1996)); *D.R. Watson Holdings v. Caliber One Indem. Co*., 15 A.D.3d 969, 969, 789 N.Y.S.2d 787 [2005] ("Pursuant to the commercial property insurance policy issued by defendant, plaintiffs are not entitled to recover the replacement cost of the heating system 'until the lost or damaged property is actually repaired or replaced….' Because plaintiffs have not repaired or replaced the heating system, the measure of their damage is actual cash value, not replacement cost."); *see also Versai Mgmt. Corp. v. Clarendon America Ins. Co*., 597 F.3d 729, 737-738 (5th Cir. (La.) 2010) (affirming summary judgment in favor of the insurer on the insured's claim for code compliance and replacement costs, holding that such costs were not recoverable under the terms of the policy at issue because the insured had not incurred such costs); *Bradely v. Allstate Ins. Co*., 620 F.3d 509 (5th Cir. (La.) 2010), affirming summary judgment in favor of the insurer on the insured's claim for replacement costs, as follows:

> [I]t is undisputed that the Bradleys have not repaired, rebuilt, or replaced the Tennessee Street property within the two-year period allowed under the policy and Louisiana law. *See Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010) ("Versai's claim for replacement costs likewise was properly dismissed because Versai has not completed repairs on this property as required by the insurance policy."); La. Dept. Ins., Directive 195. Thus, as a matter of law, the appropriate measure of the Bradleys' actual loss is the ACV of the property – not the cost to rebuild or replace the property.

*Id.* at 522. *See also Madison at Lakewood East Apts., LLC v. Landmark Am. Ins. Co.*, No. 06-9859, 2009 WL 2391236, at *3 (E.D. La. Jul. 30, 2009) and *Jouve v. State Farm Fire and Cas. Co.*, 74 So.3d 220, 228-229 (La. Ct. App. 2011).

In this case, it is undisputed that Plaintiff has not replaced any of the roofs, windows, or window seals that Plaintiff contends were damaged by the August 29, 2021, storm. Mt. Hawley's Material Facts, at ¶ 5. Accordingly, Mt. Hawley is entitled to summary judgment that Plaintiff is not entitled to recover replacement costs or code compliance costs as damages in this case.

## IV. CONCLUSION

New York law governs the choice-of-law analysis. Under New York law, particularly General Obligations Law § 5-1401 and the case law interpreting same, the choice-of-law selection made by the parties in the insurance policy must be honored without considering any extraneous common law choice-of-law arguments. The parties' selection is absolute and must be honored. Accordingly, Plaintiff's bad faith claims under La. R.S. § 22:1892 and § 22:1973 should be dismissed because New York law, the law specified in the parties' choice-of-law provision, the law that Plaintiff expressly agreed would govern, applies to all of Plaintiff's claims herein. For the reasons set forth above, Plaintiff's claim for attorney's fees should also be dismissed. Finally, because Plaintiff has not replaced the roofs, windows, or window seals, they are not entitled to replacement costs or any increased costs to comply with any ordinance or law for those items.

WHEREFORE, Mt. Hawley Insurance Company respectfully requests that the Court enter an order that New York law will apply to all of the claims asserted by Plaintiff, dismissing Plaintiff's bad faith claims under La. R.S. § 22:1892, § 22:1973, § 22:1896, and § 22:1964, or the common law, and claims for attorney's fees, holding that Plaintiff is not entitled to replacement costs or ordinance and law costs, and for such other, further, alternative or partial relief to which Mt. Hawley may be justly entitled.

Respectfully submitted,

*/s/ Greg K. Winslett*
Greg K. Winslett, admitted *pro hac vice*
Texas State Bar No. 21781900
Michael D. Feiler, admitted *pro hac vice*
Texas State Bar No. 24055475
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100
(214) 871-2111 (Fax)
gwinslett@qslwm.com
mfeiler@qslwm.com

Matthew Kraus (MK0621)
**CHARTWELL LAW**
One Battery Park Plaza, Suite 710
New York, NY 10004
mkraus@chartwelllaw.com

***ATTORNEYS FOR MT. HAWLEY INSURANCE COMPANY***

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2024, a true and correct copy of the foregoing was served on all counsel of record, *via* ECF, pursuant to the Federal Rules of Civil Procedure.

*/s/ Greg K. Winslett*
Greg K. Winslett